**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VOLODYMIR FEDUNYAK,
                            *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                            *Respondent.*

No. 04-71914

Agency No.
A78-757-706

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 16, 2006—Pasadena, California

Filed March 2, 2007

Before: John R. Gibson,* Raymond C. Fisher and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Fisher

*The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

**COUNSEL**

Tatyana A. Edwards, San Diego, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General, Terri J. Scadron, Assistant Director, Genevieve Holm, Attorney, and Surell Brady (argued), Attorney, Civil Division, United States Department of Justice, Washington, D.C., for the respondent.

---

**OPINION**

FISHER, Circuit Judge:

Volodymir Fedunyak, a Ukrainian national, petitions the court for review of a Board of Immigration Appeals (BIA) decision denying asylum and withholding of removal. Although the Immigration Judge (IJ) found that Fedunyak had suffered sufficient persecution to demonstrate that he would likely be tortured if he was returned to the Ukraine and thus was entitled to relief under the Convention Against Torture (CAT),[1] a majority of the BIA panel declined to find that Fedunyak's persecution was on account of his political opinions. We have jurisdiction under 8 U.S.C. § 1252 and review the BIA's findings of fact for substantial evidence. *See Aguiluz-Arellano v. Gonzales*, 446 F.3d 980, 982 (9th Cir. 2006). Because the record compels finding that Fedunyak's protests against official corruption constituted political opinion, we grant the petition for review and remand for further proceedings.

## I.  Background

Fedunyak opened an automobile sales business in 1997 in the Ukrainian city of Striy. The chief of Striy's registration department ordered Fedunyak to share his success and demanded that Fedunyak pay $100 for every car sold. Fedunyak made one payment but then began to register cars through his friends to avoid making the payoffs. As punish-

---

[1]The government did not appeal the Immigration Judge's grant of relief under the Convention Against Torture.

ment, three unidentified gunmen beat Fedunyak until he lost consciousness. Upon regaining consciousness, the assailants demanded that Fedunyak pay $2,000 to the registration department chief.

After forcing Fedunyak to sign a promissory note, the assailants knocked him unconscious once again. Fedunyak awoke in a hospital, where he was treated for a concussion, a broken nose, a torn ear and bruises. While recuperating, Fedunyak asked the police to investigate the attack. However, once Fedunyak was released from the hospital, a police inspector subpoenaed him and threatened to subject him to additional beatings if he did not fulfill the registration department chief's $2,000 extortion demand. Fedunyak agreed to pay the debt by delivering the money to two policemen who warned Fedunyak that he would not survive if anybody found out about the shakedown.

In early 1999, Fedunyak started a new business repairing cars. He was soon visited by an inspector from the tax police who demanded a fine of approximately $180-200 for improperly filed documents. Although Fedunyak paid the money, the tax inspector returned the next month and fined Fedunyak again for filing improper receipts. Upset over the magnitude of the fine, Fedunyak complained to the tax police chief who responded by telling Fedunyak, "I see your business is successful, you're doing fine, you need to understand everyone need to live good, you need to share, you need to pay me $100 a month."

Rather than accede to the tax chief's extortion demand, Fedunyak filed a complaint with the Mayor of Striy. The mayor criticized Fedunyak for "slandering honest people" and warned Fedunyak that if he came back with the complaint, the police would "take care of" him.

After the mayor's refusal to take action, Fedunyak filed a complaint with the Governor of the Lviv region. Fedunyak

testified that his complaint to the governor exposed the names of those officials responsible for the extortion and urged the governor to help because local authorities refused to protect him. Soon thereafter, Fedunyak was summoned before the Striy chief of police who had acquired a copy of the complaint. The police chief issued a thinly veiled death threat and threatened to throw Fedunyak into jail unless he withdrew the complaint.

After his confrontation with the police chief, Fedunyak filed yet another complaint, this time with a Supreme Soviet Deputy.[2] Although Fedunyak received no direct response from the Supreme Soviet Deputy, he was soon approached by the assailants who attacked him in 1998. The assailants punched Fedunyak in the stomach and kidney, berated him for complaining about the extortion demands and threatened him with another beating if he failed to satisfy outstanding debts.

Fedunyak testified that after this run-in, he decided to defect from the Ukraine because his complaints always ended up in the hands of those he exposed. Since leaving the Ukraine, Fedunyak has received three subpoenas to appear before the local police.

## II.   Past Persecution

In a 2-1 decision, the BIA affirmed the IJ's determination that although Fedunyak credibly testified to suffering harm, he failed to establish a nexus between that harm and one of the protected grounds for asylum relief. This conclusion is not supported by substantial evidence.

[1] Even if Fedunyak's complaints and letters did not "concomitantly espouse political theory," *Grava v. INS*, 205 F.3d

---

[2]For purposes of argument before us, the government accepted that a Supreme Soviet Deputy would be the equivalent of a congressman or senator in America's political system.

1177, 1181 (9th Cir. 2000), the BIA erred in concluding that Fedunyak's whistleblowing did not constitute an expression of political opinion. The act of whistleblowing "against corrupt government officials . . . may constitute political activity sufficient to form the basis of persecution on account of political opinion." *Id.* Fedunyak's whistleblowing was political because — in criticizing the local regime's failure to stop the extortion scheme — his acts were "directed toward a governing institution" and not "only against individuals whose corruption was aberrational." *Id.*; *see also Hasan v. Ashcroft*, 380 F.3d 1114, 1120 (9th Cir. 2004) (holding that whistleblowing was political where alien published article criticizing not just politician's corruption but also the indifference exhibited by local law enforcement).

[2] The United States Department of State's country report for 1999 confirms that corrupt Ukrainian officials have been linked frequently to a system of extortion carried out with the help of members of organized crime. By registering complaints of government corruption with various government officials, Fedunyak threatened to expose this extortion scheme.

[3] The BIA also erred in concluding that Fedunyak was not persecuted on account of political opinion. "Retaliation for investigating or publicizing corruption by political figures is by its very nature a political act." *Sagaydak v. Gonzales*, 405 F.3d 1035, 1042 (9th Cir. 2005). The Mayor of Striy threatened Fedunyak that the police would "take care of" him if he continued to expose the acts of local government officials. The Striy police chief issued a thinly veiled death threat conditioned on Fedunyak's withdrawal of his complaint to the Governor of Lviv. Finally, Fedunyak was attacked by thugs who reprimanded him for complaining about the extortion schemes. The death threats and beating that Fedunyak received as a result of his complaints establish the requisite nexus between his political opposition to government corruption and the retaliatory persecution that he suffered. To qual-

ify as a whistleblower, Fedunyak was not required to expose governmental corruption to the public at large. It was sufficient that Fedunyak demonstrated that he suffered retaliation for acting against governmental corruption. *See Njuguna v. Ashcroft*, 374 F.3d 765, 770-71 (9th Cir. 2004) (citing *Grava*, 205 F.3d at 1181) (holding that petitioner was eligible for asylum where he acted against corruption by rescuing two maids from the Saudi royal family even though he did not expose corruption to the public). Fedunyak has thereby demonstrated that he was persecuted on account of a political opinion. *See Grava*, 205 F.3d at 1181 (holding that official retaliation against those who expose governmental corruption constitutes persecution on account of political opinion when the alleged corruption is intertwined with the operation of government).

The government argues that the extortion suffered by Fedunyak was motivated by "personal" rather than "political" interests. As we noted in *Grava*, "[p]urely personal retribution is . . . not persecution on account of political opinion." *Id.* at 1181 n.3. However, many persecutors have mixed motives and "[i]n such instances, personal retaliation against a vocal political opponent does not render the opposition any less political, or the opponent any less deserving of asylum." *Id.*; *see also Borja v. INS*, 175 F.3d 732, 734 (9th Cir. 1999) (en banc) (holding that "the plain meaning of the phrase 'persecution on account of the victim's political opinion,' does not mean persecution *solely* on account of the victim's political opinion") (quoting *Osorio v. INS*, 18 F.3d 1017, 1028 (2d Cir. 1994)) (emphasis in original).

**[4]** While some of the persecution suffered by Fedunyak may have been motivated by the personal greed of local officials, Fedunyak's testimony that he was harassed, threatened and assaulted for raising complaints about the extortion scheme adequately establishes that the persecution was — at least in part — a response to his political opinion expressed through his whistleblowing.

### III. Well-Founded Fear of Future Persecution

**[5]** A showing of past persecution gives rise to a presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1); *Guo v. Ashcroft*, 361 F.3d 1194, 1204 (9th Cir. 2004). Typically, this court is required to remand to the BIA under *INS v. Ventura*, 537 U.S. 12 (2002) (per curiam), to give the government an opportunity to rebut the presumption with evidence of changed country conditions. *See Guo*, 361 F.3d at 1204.

**[6]** A *Ventura* remand in this case is inappropriate because even if Fedunyak were precluded from relying on the presumption of persecution, we would still be compelled to hold that he has established a well-founded fear of future persecution. *See Nuru v. Gonzales*, 404 F.3d 1207, 1228-29 (9th Cir. 2005) (holding that alien "easily met" the burden of establishing a well-founded fear of persecution by demonstrating a high probability of torture on account of political opinion if returned to native country). The IJ concluded that Fedunyak qualifies for relief under the Convention Against Torture because it is more likely than not that he would be tortured if returned to the Ukraine, and the government has not challenged that finding. That risk of torture derives in part from his political resistance to the government's extortion schemes, as detailed above. Having shown that it is more likely than not that he will be subjected to torture on account of political opinion, Fedunyak has "easily met the lesser burden of establishing a well-founded fear of persecution." *Id.* at 1229.

### IV. Withholding of Removal

**[7]** To establish eligibility for withholding of removal, an applicant must meet a more stringent standard of proof than is required for asylum. *See Navas v. INS*, 217 F.3d 646, 655 (9th Cir. 2000). A petitioner must establish a "clear probability" that he would be persecuted were he to be deported to his home country. *See Korablina v. INS*, 158 F.3d 1038, 1045

(9th Cir. 1998). To demonstrate a clear probability of persecution, a petitioner must prove that it is "more likely than not" that he will be persecuted on account of a statutorily protected ground. *Id.* at 1046 (citation omitted). By demonstrating past persecution, Fedunyak is entitled to a presumption of eligibility for withholding of removal. *See* 8 C.F.R. § 1208.16(b) (1)(i); *Navas*, 217 F.3d at 657.

**[8]** For the same reasons as stated above, remand of Fedunyak's withholding of removal claim is unnecessary. Because Fedunyak has established it is more likely than not he will be tortured on return to the Ukraine on account of political opinion, he has demonstrated the existence of a clear probability of future persecution. *See Nuru*, 404 F.3d at 1229. Accordingly, Fedunyak is entitled to withholding of removal. *See* 8 U.S.C. § 1231(b)(3).

## V.   Conclusion

**[9]** We conclude that Fedunyak suffered past persecution because of his political opinion and that he has shown a genuine and well-founded fear of future persecution should he return to the Ukraine. Under these circumstances, Fedunyak is eligible for asylum. We also conclude that Fedunyak is entitled to withholding of removal. We remand this case to the BIA for the Attorney General to exercise his discretion under 8 U.S.C. § 1158(b) as to whether to grant asylum, and for an appropriate order withholding removal of Fedunyak. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1079 (9th Cir. 2004).

The petition for review is **GRANTED; REMANDED for further proceedings.**