Virgil PRUNARU, Petitioner,

v.

Michael B. MUKASEY, Attorney General, Respondent.

No. 06–72009.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 28, 2007.*

Filed March 12, 2008.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

R.App. P. 34(a)(2).

Alexandru A. Cristea, Esq., Downey, CA, for Petitioner.

CAC–District Counsel, Esq., Office of the District Counsel, Los Angeles, CA, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel, San Francisco, CA, Regina Byrd, Esq., Ernesto H. Molina, Jr., Esq., U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: SKOPIL, FARRIS, and BOOCHEVER, Circuit Judges.

### MEMORANDUM **

Virgil Prunaru, a native and citizen of Romania, petitions for review of the Board of Immigration Appeals (BIA) opinion affirming the decision of an Immigration Judge (IJ), denying Prunaru's application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252. We review the BIA's opinion, which individually reviewed the record and did not state that it adopted the IJ's decision, for substantial evidence. *See Fedunyak v. Gonzales,* 477 F.3d 1126, 1127 (9th Cir.2007), *Simeonov v. Ashcroft,* 371 F.3d 532, 535 (9th Cir.2004). We deny the petition for review.

■ To qualify for asylum, Prunaru had the burden to show that he was persecuted on account of a protected status, by demonstrating past persecution or a well-founded fear of future persecution. *See* 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. 1208.13(b). Substantial evidence supports the BIA's conclusion that the harsh treatment Prunaru experienced in the Romanian army in 1986 was not on account of his political opinion but because he attempted to avoid conscription. *See Zehatye v. Gonzales,* 453 F.3d 1182, 1187 (9th Cir.2006) (forced conscription or punishment for evading service generally is not persecution). Prunaru's second arrest in 1989 occurred while he was trying to leave the country illegally, and the evidence does not compel us to conclude that the physical mistreatment by the border police was based on his political opinion.

■ The evidence does compel us to conclude, however, that the four beatings and two arrests (one overnight and one for two days) that Prunaru suffered during 1990–1992 constitute persecution on account of political opinion. Each occurred after and because of his participation in an anti-government action, whether a demonstration, political meeting, or distribution of political material. In each case the police, soldiers or civilians sanctioned by

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

the government abused Prunaru physically by beating him. We have "consistently found persecution where, as here, the petitioner was physically harmed." *Nahrvani v. Gonzales,* 399 F.3d 1148, 1153 (9th Cir. 2005) (internal quotations omitted); *see Nagoulko v. INS,* 333 F.3d 1012, 1016–17 (9th Cir.2003) (listing cases). "Where an applicant suffers such harm on more than one occasion, and as in this case is victimized at different times over a period of years, the harm is severe enough that no reasonable fact-finder could conclude that it did not rise to the level of persecution...." *Chand v. INS,* 222 F.3d 1066, 1073–74 (9th Cir.2000).

Although Prunaru did not testify that he was seriously injured, neither the government nor the IJ asked for details regarding the extent of his injuries. *See id.* at 1074 (absence of detail is insignificant when IJ made no attempt to elicit more specific description). Further, lack of serious injury does not settle the question of whether physical violence constitutes persecution. "The fact that Petitioner suffered no serious bodily injury and required no medical attention makes the question [of persecution] closer. But it would be a strange rule if the absence or presence of a broken arm were the dispositive fact." *Mihalev v. Ashcroft,* 388 F.3d 722, 730 (9th Cir.2004). The evidence compels us to conclude that the physical violence against Prunaru amounted to persecution on account of his political opinion.

■ Because Prunaru showed past persecution, he is entitled to a rebuttable presumption that he will be persecuted in the future if he returns to Romania. *See Chand,* 222 F.3d at 1078. The BIA made an alternative finding that although Prunaru subjectively feared returning to Romania, the 2003 State Department Country Report submitted by the government indicated that country conditions had changed, and that Prunaru's subjective fear of future persecution was not objectively reasonable. This portion of the BIA's opinion is supported by substantial evidence. The Country Report notes that the 2000 elections were free and fair and that the Romanian government generally respected its citizens' human rights. The government had prosecuted and sentenced to ten years imprisonment two officers who beat a dissident to death in 1985. Unlike in previous years, the government observed the Romanian Constitution's prohibition of arbitrary arrest and detention. There were no reports of political prisoners, and the government generally respected the rights of freedom of expression and of the press, allowing private citizens to criticize the government and other authorities. Further, the government respected the freedom of assembly and association and allowed political parties. Prunaru's only response when asked about this evidence of changed conditions was to say "I don't think so," and to state that he did not believe the country report. Prunaru also presented no evidence of any continuing interest in him in Romania, where his mother remained without any incident. Substantial evidence supports the BIA's conclusion that country conditions have changed sufficiently to rebut the presumption that Prunaru's fear of future persecution was well-founded.

For withholding of removal, Prunaru must show that it was more likely than not that he would be subject to persecution in Romania. Prunaru has necessarily failed to meet this higher burden. *See Mihalev v. Ashcroft,* 388 F.3d 722, 730–31 (9th Cir. 2004).

For relief under CAT, Prunaru must demonstrate "that it is more likely than not that he ... would be tortured if removed" to Romania. 8 C.F.R. § 208.16(c)(2). Given the changed conditions described in the 2003 Country Re-

port, substantial evidence supports the BIA's conclusion that he did not meet this burden.

 Finally, it was not an abuse of discretion to refuse to continue the asylum hearing, when the IJ had already granted four years of continuances to allow Prunaru to seek a labor certification. *See Vargas–Hernandez v. Gonzales,* 497 F.3d 919, 923 (9th Cir.2007).

PETITION FOR REVIEW DENIED.

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.