KLEINFELD, Senior Circuit Judge,
dissenting:
I respectfully dissent.
Khudaverdyan supervised the waiters at a restaurant frequented by government officials, foreign visitors and business people. One night at the restaurant, Khudav-erdyan responded to a complaint by the police chief that “the food doesn’t taste good” and was “served late.” Rather than apologizing and giving the deferential response that the police chief may have expected, Khudaverdyan said that “our food is good ... [it] requires a long time [to prepare] and ... we have other guests.” Khudaverdyan says that his response “humiliated” the police chief because he was with “ladies and friends.” Khudaverdyan’s own testimony is that because of his response, the chiefs two bodyguards took him outside and beat him up. A week after the restaurant beating, a reporter approached Khudaverdyan for information about the incident. He agreed to meet with her, but ultimately decided not to tell her anything. Later that day, he was picked up by the police, held overnight, and accused of espionage the following morning. He was beaten and threatened with life in prison and with the conscription of his son into the military for “dishonoring the military police.” The next morning he was released when his wife and cousin gave the police a $3,000 bribe.
Thus, Khudaverdyan’s account of the facts supports the inference that his mistreatment was not attributed to an imputed political opinion. Substantial evidence on the record supports the BIA’s decision crediting Khudaverdyan’s opinion about why he was abused. Khudaverdyan testified that his mistreatment at the hands of the police was due to disrespect, not politics. “Q: [][Y]ou believe that you had been abducted all because of insulting the chief of police? A: Yes. Nothing else.” *1111 Khudaverdyan’s own testimony supports the BIA’s decision, not the majority’s, because “nothing else” brought about his travails but “insulting” the police chief.
The BIA agreed with the IJ that Khu-daverdyan “did not establish that his past harm and feared future harm were on account of an imputed political opinion.”[1] The BIA expressly noted that “official retaliation against those who expose governmental corruption may amount to persecution on account of political opinion,” but found that Khudaverdyan did not demonstrate that his actions were so intended or understood. The BIA found that the abuse Khudaverdyan suffered was personal, flowing from the police chiefs “violent reaction to the respondent’s perceived insult.” [2]
I am baffled as to why the majority thinks that the BIA doesn’t understand the doctrine of imputed political opinion and its extension to whistleblowing. The BIA considered these claims and found them to be without merit. The law that should control this case is the standard of review. “The BIA’s determination ... must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole. It can be reversed only if the evidence presented [ ] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.”[3] This burden of proof is on the petitioner. We.do not have authority to overturn a BIA decision supported by substantial evidence, as this one was, even though an argument can be made that the evidence could have been interpreted in a different way to support relief. “ ‘In order to reverse the BIA, we must determine that the evidence not only supports [a contrary] conclusion, but compels it’ and also compels the further conclusion that the petitioner meets the requisite standard for obtaining relief.”[4] Sometimes this deferential standard of review is troubling, but not here. The majority says that the BIA overlooked a legal doctrine, “imputed whistleblowing” that could support relief.[5] The BIA did not overlook anything. We are required by law to deny the petition if there is substantial evidence for its determination. There was.
Evidently, the majority thinks that Khudaverdyan was wrong about why he was beaten and jailed, and that the BIA is ignorant of the law. I cannot see how the evidence would compel that view or even support it. The BIA could reasonably interpret the accusation of “dishonoring” the military police to mean talking back instead of showing respect. The police chief obviously disliked being embarrassed in front of his friends by a waiter. Had Khudaverdyan told this story to the reporter, it would likely have further embarrassed the police chief. Our anticor-ruption political opinion cases bear little resemblance to Khudaverdyan’s. For instance, in Hasan v. Ashcroft,[6] an Armenian woman wrote a newspaper article exposing corruption of a high government official. In Grava v. I.N.S.,[7] a Filipino man reported several instances of smug *1112 gling by corrupt customs officers. In Badhdasaryan v. Holder,[8] a business owner organized a rally with 100 other business owners to protest bribes they had to pay to corrupt government officials to stay in business, and in Fedunyak v. Gonzales,[9] a car dealer refused to pay a bribe to corrupt local government officials and reported the conduct to the local police, the mayor, and his congressman. The majority evidently seeks to expand the category of asylum for persecution on account of political opinion to anyone anywhere who suffers abuse by an arrogant bully with a government job. Maybe there is someplace on earth free from such bullies, but I doubt it.
Judge Owens provides a good definition of corruption, “abuse of entrusted power for personal gain.” But, if the “personal gain” includes the feeling of vindication a person with political power gets from hurting someone insufficiently obsequious, as in this case, then the definition is too inclusive to be useful. Khudaverdyan was abused by a bullying police chief because he talked back, not because of whatever political opinions he had or that might have been imputed to him. Ironically, the only corrupt conduct squarely under Judge Owens’s definition was Khudaverdyan’s cousin who “had connections” showing up at the jail with a $3,000 bribe. The police took the money and let Khudaverdyan go. Nothing in the record showed that the police requested a bribe, but fortunately for Khudaverdyan, police greed trumped police arrogance.
If Congress chooses to extend asylum to all who have been abused by arrogant government employees, it can. But so far, it has offered it only to those who flee their countries, “because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.”[10] Substantial evidence supported the BIA’s conclusion that Khu-daverdyan did not bear his burden of proof that he fell within this classification.

. Decision of the Board of Immigration Appeals, September 30, 2010.

. Id.

. I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (internal citation omitted) (emphasis added).

. Garcia-Milian v. Holder, 755 F.3d 1026, 1031 (9th Cir.2014) (quoting INS v. Elias-Zacarias, 502 U.S. ,478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 n.l (1992)).

. Maj. Op. at 1108, n. 6.

. 380 F.3d 1114 (9th Cir.2004).

. 205 F.3d 1177 (9th Cir.2000).

. 592 F.3d 1018 (9th Cir.2010).

. 477 F.3d 1126 (9th Cir.2007).

. 8 U.S.C. § 1101(a)(42)(A).