**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ISIDRO PEREZ-RAMIREZ,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 07-70114

Agency No.
A076-679-915

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 12, 2011—San Francisco, California

Filed July 8, 2011

Before: Procter Hug, Jr., Mary M. Schroeder, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Hug

## COUNSEL

Paula J. Solorio and Sarah Kate Heilbrun, Law Offices of Fellom & Solorio, San Francisco, California, for the petitioner.

Eric W. Marsteller and Justin Markel, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

HUG, Senior Circuit Judge:

Isidro Perez-Ramirez ("petitioner"), a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals' ("BIA") decision dismissing his appeal from an immigration judge's ("IJ") decision denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Petitioner argues on appeal that he acted as a whistleblower against government corruption and that the BIA erred in denying his claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We hold that petitioner qualifies as a whistleblower. Thus, we grant the petition for review, reverse the BIA, and remand the case accordingly.

## I.  Background

Petitioner worked as a purchasing analyst for PROTIN-BOS, an agency of the State of Mexico that developed forested areas. In 1986, petitioner noticed certain major accounting irregularities at work. Petitioner discovered that fictitious names of employees who did not exist had been listed on an employment register. He discovered that fraudulent claims had been submitted for payment of overtime hours and that employees had made fraudulent requests for gas reimbursements and car repairs. He related this information to his supervisor, Rosa Martinez, and she told him to cure the problems. In January or February 1987, petitioner overhauled the accounting process and implemented certain reforms, such

as personally distributing paychecks and going to the agency's greenhouses.

In February 1987, while petitioner was traveling on a rural highway, he was stopped by men blocking the road. The men told petitioner that a high-ranking government official said that he should give the payroll records to the managers of the greenhouses and that he should not pay employees directly. After this incident, from February through May 1987, petitioner was threatened twice and physically attacked five times. On one occasion, petitioner was traveling and a tree blocked the road. Petitioner exited the vehicle and was hit on the back of his neck and kicked after he fell to the ground. The attackers threatened to kill him if he did not stop implementing the reforms. Petitioner reported the attacks to his supervisor, but the attacks continued until he stopped traveling to the greenhouses and was promoted to manager of general services in May 1987.

As manager, petitioner discovered more accounting irregularities, such as missing funds, and reported the problems to his supervisor. Several months later, in January 1988, petitioner changed positions and became manager of purchasing and general services. In this position, petitioner reported to his old supervisor, Ms. Martinez, and a new supervisor, David Moreno. Mr. Moreno began pressuring petitioner to engage in corrupt business acts. He told petitioner that he had to make purchases from distributors that Mr. Moreno selected and conduct business deals with vendors who would share a percentage of the sales. Petitioner refused to comply. Mr. Moreno attempted to sabotage purchasing deals and petitioner was subjected to severe abuse and harassment. He was arrested eight times by the police who told him that he needed to comply with Mr. Moreno's requests if he wanted to stay alive. During some of these detentions, petitioner was tortured: the police officers tied him to a board and put his head in water on one occasion; on another occasion, the officers forced chiles and mineral water into his nose.

After enduring such abuse, petitioner told Mr. Moreno he wanted to resign. Mr. Moreno, however, told petitioner that he owed a debt of 600 million pesos which had to be paid before he could leave the agency. Mr. Moreno could not tell petitioner how the debt came into existence. While trying to secure records to rectify the debt, petitioner was ordered to join the Institutional Revolutionary Party ("PRI") and transport employees for a political rally. Petitioner refused to join the PRI. Finally, petitioner managed to secure records showing that he did not owe any debt and left PROTINBOS in June 1989.

On October 12, 1989, a fire erupted at a PROTINBOS warehouse which destroyed records of the goods that had gone missing during petitioner's tenure at PROTINBOS. The insurance company investigating the fire arranged to interview petitioner. Before the interview could occur, the state police kidnaped petitioner at gunpoint, beat him, and held him hostage for a weekend. For the duration of the weekend, a canvas bag was placed over petitioner's head and he was not allowed to go to the bathroom or eat. On the first night, they tied him up and left him hanging. His captors told him that they were going to kill him if he didn't keep his mouth shut about the records. They instructed him to tell investigators that the PROTINBOS warehouse which went up in flames had been full of finished products and raw material.

After petitioner was released by his captors, he made the requested false statements to the investigators and the government. After he made the statements, he continued to receive threatening phone calls. Four months later, he left Mexico. Despite his absence, his parents were harassed. On two occasions, individuals came to his parents' home looking for him and threatened his father. His parents' ranch animals were stolen and in one instance killed.

In 1997, petitioner applied for asylum, withholding of removal, and CAT relief on the ground that he was persecuted

and tortured as a whistleblower of government corruption. The IJ denied relief, holding that petitioner did not qualify as a whistleblower. The BIA majority affirmed, holding that he was not a whistleblower because he did not expose the corruption to an outside agency. The dissenting BIA member stated petitioner did constitute a whistleblower. *See In re Perez-Ramirez*, slip op. at 4 (BIA Dec. 20, 2006) (Osuna, dissenting) ("[R]espondent's effort to combat corruption within his agency . . . constitute political activity, . . . respondent has established past persecution on account of his political opinion.").

On February 9, 2006, this court granted the government's motion to remand to allow the BIA to clarify its findings in light of *Hasan v. Ashcroft*, 380 F.3d 1114 (9th Cir. 2004). On December 20, 2006, the BIA majority again held, in a 2 to 1 decision, that petitioner failed to show a nexus to political opinion because he was not a whistleblower. The dissenting BIA member again stated that petitioner did qualify as a whistleblower of government corruption.

## II.    Discussion

### A.    Standard of Review

We review for substantial evidence the BIA's decision that an applicant has failed to establish eligibility for asylum and withholding of removal. *Njuguna v. Ashcroft*, 374 F.3d 765, 769 (9th Cir. 2004). Where the BIA conducts its own review of the evidence and law rather than adopting the IJ's determination our "review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (internal quotation mark and citation omitted).

### B.    Asylum & Withholding of Removal

[1] Petitioner argues that the BIA erred in denying his asylum and withholding of removal claims, holding he did not

qualify as a whistleblower of government corruption because he did not report the corruption to an outside agency. Whistle-blowing by a government employee against government officials engaged in corruption "may constitute political activity sufficient to form the basis of persecution on account of political opinion" for the purposes of an asylum claim. *Grava v. INS*, 205 F.3d 1177, 1181 (9th Cir. 2000). "Refusal to accede to government corruption can constitute a political opinion" and any retaliation against an individual who exposes the corruption may amount to persecution for asylum. *Id.* Retaliation for exposing corruption by government officials is "by its very nature a political act." *Fedunyak v. Gonzales*, 477 F.3d 1126, 1129 (9th Cir. 2007) (quoting *Sagaydak v. Gonzales*, 405 F.3d 1035, 1042 (9th Cir. 2005)). When a political leader uses his government office "to siphon public money for personal use, and uses political connections throughout a wide swath of government agencies" to facilitate and "protect his illicit operations, exposure of his corruption is inherently political." *Hasan*, 380 F.3d at 1121. The individual is "not required to expose governmental corruption to the public at large" or an outside agency in order to qualify as a whistle-blower for the purposes of asylum. *Fedunyak*, 477 F.3d at 1129. It is sufficient if the whistleblowing individual reported the government corruption to superiors and suffered retaliation for acting against the corruption. *Id*.

In this case, the BIA erred in holding that petitioner did not qualify as a whistleblower because he did not expose the government corruption to an outside agency. Petitioner discovered and reported major incidents of fraud occurring within his state agency. Petitioner reported the corruption to his supervisor, Ms. Martinez, repeatedly throughout 1987 and 1988. Reforms were implemented and the result was that petitioner endured retaliation, including being threatened and attacked by individuals who threatened to kill him if he did not end the reforms. He reported these attacks as well as additional fraudulent incidents he discovered to his supervisor, Ms. Martinez. When he began reporting to another supervisor,

David Moreno, petitioner endured further severe persecution and retaliation. Mr. Moreno pressured petitioner to engage in corrupt business acts and siphon funds from sales. Petitioner refused. Because he refused to accede to Mr. Moreno's demands, petitioner was arrested and detained eight times by the police. The police told him that he had to acquiesce to Mr. Moreno's wishes if he wanted to stay alive and he was repeatedly tortured. When petitioner tried to resign, Mr. Moreno created a fictitious debt that petitioner owed. Petitioner was forced to remain at the agency until the false claim was resolved. Even after petitioner left the agency, the state police kidnaped him at gunpoint, tortured him, and told him to lie to investigators about products in the fire-stricken warehouse owned by the state.

**[2]** Petitioner's exposure of the government corruption to his supervisor, Ms. Martinez, and his refusal to accede to Mr. Moreno's corrupt demands, are acts which constitute political activity and qualify petitioner as a whistleblower of government corruption. Repeatedly exposing the corruption to his supervisor was adequate; he did not need to report it to an outside agency to qualify as a whistleblower of government corruption. *See id.* at 1129-30 (holding that an alien's refusal to comply with extortion demands by officials and his reporting the corruption to higher officials was political and was whistleblowing activity); *Njuguna*, 374 F.3d at 768-71 (holding that an alien was eligible for asylum where he acted against corruption by rescuing two maids from the Saudi royal family even though he did not expose the corruption to the public). Petitioner suffered severe retaliation for refusing to comply with Mr. Moreno's criminal demands, including being arrested eight times by the police and tortured during his detentions, which constitutes past persecution. *See Guo v. Ashcroft*, 361 F.3d 1194, 1197, 1203 (9th Cir. 2004) (holding that two arrests and repeated beatings constituted persecution). Thus, petitioner has demonstrated nexus on account of political activity for asylum and withholding of removal.

**[3]** The BIA denied petitioner asylum and withholding of removal because he failed to establish a nexus to political activity, which is erroneous. We therefore grant the petition for review and remand to the BIA for consideration of whether the government has met its burden to rebut the presumption that petitioner has a well-founded fear of future persecution on the basis of his whistleblowing activities. *See INS v. Ventura*, 537 U.S. 12, 16-18 (2002) (remanding to the BIA to determine in the first instance whether the government has met its burden to rebut this presumption).

## C.   CAT Relief

**[4]** Petitioner argues that the BIA erred in holding that he did not establish CAT relief. To establish CAT relief, petitioner must show it is more likely than not that he will be tortured by a public official or with the consent or acquiescence of such an official if returned to his country of origin. *See Wakkary v. Holder*, 558 F.3d 1049, 1067-68 (9th Cir. 2009). "In assessing whether it is more likely than not that an applicant would be tortured . . . *all evidence relevant to the possibility of future torture shall be considered*, including, but not limited to: [e]vidence of past torture, . . .; [e]vidence that the applicant could relocate . . .; [e]vidence of gross, flagrant or mass violations of human rights within the country of removal; and other relevant information regarding conditions in the country of removal." *Kamalthas v. INS*, 251 F.3d 1279, 1282 (9th Cir. 2001) (quoting 8 C.F.R. §§ 208.16(c)(2), (3)) (first emphasis and first ellipsis in the original) (second emphasis omitted).

**[5]** As we have previously acknowledged, "it will rarely be safe to remove a potential torture victim on the assumption that torture will be averted simply by relocating him to another part of the country." *Nuru v. Gonzales*, 404 F.3d 1207, 1219 (9th Cir. 2005). Thus, when the past-persecution is shown, the government bears the burden to show by a preponderance of the evidence that the petitioner can move else-

where within the country. *Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003) ("[B]ecause a presumption of well-founded fear arises upon a showing of past persecution, the burden is on the INS to demonstrate by a preponderance of the evidence, once such a showing is made, that the applicant can relocate internally to an area of safety."). Additionally, when petitioner "has established a well-founded fear of future persecution at the hands of the government, a rebuttable presumption arises that the threat exists nationwide and therefore that internal relocation is unreasonable." *Id.*

**[6]** In this case, the BIA improperly placed the burden on petitioner to show that he could not relocate within Mexico and failed to apply the presumption of a nationwide threat. The BIA held that although the abuse petitioner suffered did constitute torture, there was no evidence that he could not relocate within Mexico. We vacate the BIA's decision regarding CAT relief and remand for the agency to determine whether the government met its burden. *See Fakhry v. Mukasey*, 524 F.3d 1057, 1065 (9th Cir. 2008) (remanding to the BIA to determine whether the government rebutted the presumption of a nationwide threat).

### III.   Conclusion

We reverse the BIA's denial of petitioner's asylum, withholding of removal, and CAT claims, and remand for further proceedings consistent with this opinion.

PETITION GRANTED; REMANDED.

Each party shall bear their own costs.