**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERTO CURINSITA MALDONADO, *Petitioner*, | No. 09-71491 |
| | Agency No. A017-263-848 |
| v. | |
| LORETTA E. LYNCH, Attorney General, *Respondent*. | ORDER AND OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted En Banc
September 19, 2014—San Francisco, California

Filed March 27, 2015
Amended May 18, 2015

Before: Alex Kozinski, Kim McLane Wardlaw, Ronald M. Gould, Richard A. Paez, Richard R. Clifton, Milan D. Smith, Jr., Sandra S. Ikuta, N. Randy Smith, Morgan Christen, Paul J. Watford, and Michelle T. Friedland, Circuit Judges.

Order;
Opinion by Judge Paez;
Dissent by Judge Gould;
Dissent by Judge M. Smith

## SUMMARY[*]

### Immigration

The en banc court overruled *Hasan v. Ashcroft*, 380 F.3d 1114 (9th Cir. 2004), *Lemus-Galvan v. Mukasey*, 518 F.3d 1081 (9th Cir. 2008), *Singh v. Gonzales*, 439 F.3d 1100 (9th Cir. 2006), and *Perez-Ramirez v. Holder*, 648 F.3d 953 (9th Cir. 2011), to the extent they conflict with the plain text of the regulations governing internal relocation and deferral of removal under the Convention Against Torture.

The en banc court first determined that the petition was not moot, notwithstanding petitioner's removal after filing his petition for review, because there was solid evidence that petitioner is currently present in the United States.

The en banc court held that *Hasan* and *Lemus-Galvan* are inconsistent with 8 C.F.R. §§ 1208.16(c)(2) and (3) because they improperly place the burden on the petitioner to prove that internal relocation is impossible. The en banc court also concluded that *Singh* departs from § 1208.16(c)(3) because the regulation does not specify that the inability to relocate safely is an element of claim for deferral of removal for which a petitioner bears the burden of proof, and that *Perez-Ramirez* improperly applied to the CAT context the burden-shifting scheme for internal relocation applicable to asylum claims.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The en banc court held that neither the petitioner nor the government bear the burden of proof as to internal relocation, rather such evidence, if relevant, must be considered in assessing whether it is more likely than not that the petitioner would be tortured if removed. The court remanded to the Board for reconsideration of petitioner's eligibility for deferral of removal.

Dissenting, Judge Gould, joined by Judges Clifton, Ikuta, and N.R. Smith, would dismiss the case as moot because petitioner has not been in touch with his attorney and it is not clear that petitioner is currently in the United States.

Dissenting, Judge M. Smith, joined by Judge Clifton, also believes that the case is moot, but wrote separately to state that even if he agreed with the majority that Maldonado's petition for review continues to present a justiciable controversy, which he does not, he would affirm the denial of deferral of removal because the Board cited other appropriate factors in denying relief. He agrees with the majority that *Perez-Ramirez* must be overruled, and that the Board may have interpreted language in *Lemus-Galvan* as requiring a petitioner to establish that internal relocation is impossible, but he does not agree that *Hasan* and *Singh*, and the substance of *Lemus-Glavan*, conflict with the regulations.

---

## COUNSEL

Haitham Edward Ballout (argued), and Mairead C. Donahey, Law Offices of Haitham E. Ballout, Burlingame, California, for Petitioner.

Andrew C. MacLachlan (argued), Senior Litigation Counsel, and Ilissa M. Gould, Attorney, United States Department of Justice, Office of Immigration Litigation, Washington D.C., for Respondent.

**ORDER**

The Government's Motion to Clarify Decision is granted as follows.  On page 5 of the slip opinion, filed on March 27, 2015, the text of footnote 1 is amended as follows: "Because the IJ deemed Maldonado credible, we take his testimony as true for purposes of this opinion.  *See, e.g.*, *Singh v. Holder*, 764 F.3d 1153, 1159 (9th Cir. 2014)."

**OPINION**

PAEZ, Circuit Judge:

Roberto Curinsita Maldonado ("Maldonado") petitions for review of the Board of Immigration Appeals' ("BIA") decision dismissing his appeal of an immigration judge's ("IJ") denial of his application for deferral of removal under the Convention Against Torture ("CAT").  Although the IJ found that Maldonado testified credibly that he was tortured by corrupt Mexican police officers after he was deported in 2000, the BIA concluded that Maldonado was not "eligible for deferral of removal under [CAT] because he failed to establish that internal relocation within Mexico was impossible."

In this proceeding, Maldonado argues that, although he bears the ultimate burden to prove he would be tortured if returned to Mexico, the BIA's ruling on internal relocation is inconsistent with the plain text of the governing regulation, 8 C.F.R. § 1208.16(c)(3). He also challenges our framework in *Lemus-Galvan v. Mukasey*, 518 F.3d 1081, 1084 (9th Cir. 2008), which the BIA cited in support of its ruling. We acknowledge that our case law on internal relocation under CAT departs from the text of § 1208.16(c)(3). We therefore take this opportunity sitting en banc to clarify our case law and to restore the integrity of § 1208.16(c)(3) in the analysis of a claim for deferral of removal under CAT. In light of the BIA's reliance on our interpretation of § 1208.16(c)(3), we grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.

While this petition for review was pending, Maldonado was removed to Mexico. This development prompted us to question whether this petition is moot. After considering the government's response to our post-argument inquiry, we conclude, as explained below, that this petition is not moot and proceed to the merits.

## I. Background

*Factual Basis for Torture Claim*[1]

Maldonado entered the United States in 1966 as a young child. He obtained lawful permanent resident status through his father. As the result of a first degree burglary conviction

---

[1] Because the IJ deemed Maldonado credible, we take his testimony as true for purposes of this opinion. *See, e.g.*, *Singh v. Holder*, 764 F.3d 1153, 1159 (9th Cir. 2014).

in 1991, he was stripped of that status in 1997 and ordered deported to Mexico.**[2]**

   After Maldonado returned to Mexico, he attempted to settle in his family's hometown, Ciudad Hidalgo, in the state of Michoacan. As he passed through inspection at the airport in nearby Morelia, he was detained by what Maldonado described as "Mexican officers" or "Mexican judicial police"**[3]** who were inspecting individuals arriving after removal from the United States. The officers handcuffed him and took him to a police station. They questioned him about tattoos on his body, which they insisted were proof that he had been in a Mexican prison before relocating to Michoacan. As the police officers questioned Maldonado, they beat him, drove screwdrivers into his legs, and burned him with cigarettes, leaving multiple scars. At other points during his detention, the police officers administered shocks to his testicles and placed a bag filled with water over his head such that he believed he was choking. For approximately one month, the police detained Maldonado in a cell at the station without access to a phone. While in custody, they continued to torture him. Eventually, Maldonado was able to contact his father, who paid $15,000 for his release. The police officers did not release Maldonado to his father. Instead, they moved

---

   **[2]** Although Maldonado's declaration in support of his CAT claim states that he was ordered deported "[i]n or around 1998," he testified that he did not leave the United States until 2000. The government, however, clarified that he was ordered removed on June 17, 1997, and was actually removed on November 7, 1998.

   **[3]** Maldonado used these English-language terms along with two additional Spanish-language terms, "judiciales" and "policiales," to describe the corrupt Mexican police officers who seized him.

Maldonado by helicopter to a prison and demanded more money for his release.

After three months of captivity and torture, the police informed Maldonado that they would release him only on the condition that he guide other recent deportees into their hands. When Maldonado refused, they stabbed him in the leg and beat him for two days. Fearing for his life, he agreed to participate. Maldonado's role in the criminal enterprise was to approach recent deportees at the airport, promise to assist them, and guide them to hotels that had been chosen by the police. Maldonado would instruct the deportees to wait for him in the hotel. Instead of returning, Maldonado would notify the police, who would then go to the hotel and take the deportees into custody where, according to Maldonado, they likely suffered a fate similar to his own. Maldonado received modest payments for his assistance. After he had saved enough money, Maldonado fled the enterprise and re-entered the United States illegally.

Between 2000 and 2007, Maldonado returned to the United States and was deported three separate times. Each time he returned to Mexico, he was subjected to further torture and abuse in retaliation for leaving the criminal enterprise. When he returned to Ciudad Hidalgo after his removal in 2007, the enterprise had grown in sophistication and was apprehending deportees from airports across Mexico and taking them to prisons and other locations in Michoacan. The corrupt officers had also expanded the enterprise to include kidnapping elected officials' children. Wanting nothing more to do with the criminal enterprise, Maldonado tried to sever his ties. When he attempted to leave the enterprise, however, he suffered further abuse. He suspected

that he was being monitored and followed by the enterprise's operatives.

Maldonado approached his only relative in the area, a cousin, for help.  His cousin provided Maldonado with a small amount of money, which he used to travel by bus to Sonora, near the United States-Mexico border.  In 2007, Maldonado attempted to enter the United States by foot through the Arizona desert, where he was apprehended.

Maldonado asserts that if he is returned to Mexico, the enterprise will kill him because he "know[s] too much of what they were doing."  In particular, Maldonado fears that he would be targeted because he overheard discussions of the enterprise's plans to begin pursuing government officials and their families.  Maldonado suspects that photographs of him have been distributed to federal police "all over the place."

*Administrative Proceedings*

On July 23, 2008, the Department of Homeland Security reinstated Maldonado's June 17, 1997, removal order pursuant to 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8. Because Maldonado feared that he would be tortured if returned to Mexico, the matter was referred to an asylum officer for a reasonable fear determination.  *See* 8 C.F.R. § 241.8(e).  An asylum officer interviewed Maldonado, found him credible, and determined that he had a reasonable fear of being tortured by the corrupt "Mexican judicial police" if he were returned to Mexico.  Maldonado's matter was next referred to an immigration judge for a hearing on his claim of torture and request for relief under CAT.  *See* 8 C.F.R. § 208.31(e).  In pursuit of such relief, Maldonado filed a formal application with the IJ, which he supported with a

declaration outlining the above facts and other documentary evidence regarding country conditions and official corruption in Mexico.

In considering Maldonado's request for deferral of removal under CAT, the only relief he sought, the IJ credited Maldonado's testimony.   The IJ, however, denied his application because Maldonado "has available to him the opportunity to relocate in the country without fear of harm." The IJ acknowledged Maldonado's testimony that the enterprise had expanded its scope by entrapping deportees from across Mexico, but reasoned that, because the enterprise had to transport those deportees to its principal base in Michoacan, its authority did not extend nationwide.  The IJ determined that relocation was possible because, although police corruption in Mexico was "rampant," the government was "taking steps to investigate and prosecute those involved in corruption."  The IJ thus suggested that Maldonado could trade evidence of the corruption he witnessed for the Mexican government's protection from the enterprise.  Maldonado timely appealed to the BIA.

In affirming the IJ's decision, the BIA "agree[d] with the . . . finding that the respondent is not eligible for deferral of removal under [CAT] because he failed to establish that internal relocation within Mexico was impossible."  The BIA further explained that Maldonado "did not show that the influence of the corrupt police officers in Morelia extended country wide."  According to the BIA, Maldonado's evidence that the enterprise was run by federal officers, and not city or state officers, was "speculative and unpersuasive."   It reasoned that "even if corrupt federal officers were involved, the respondent has not shown that they could locate him in every area of Mexico."   The BIA relied, in part, on

documentary evidence that the Mexican government was prosecuting police corruption as further evidence that Maldonado could safely relocate. Thus, Maldonado "failed to satisfy the requirements for eligibility for deferral of removal under [CAT]."

*Petition for Review and Removal*

Maldonado filed a timely petition for review. He filed a motion for a stay of removal pending review, which a motions panel of this court denied. At oral argument, after confirming that Maldonado had been removed to Mexico, we raised the question of whether this petition was moot. We ordered the government to submit documentary proof that Maldonado was actually removed from the United States, and allowed the parties to present evidence of Maldonado's current presence in the United States. The government's response included documentation that on October 28, 2009, an immigration officer removed Maldonado to Mexico. The government's response also included documentation from the California Department of Motor Vehicles that Maldonado updated his driver's license in April 2010. Maldonado filed a response, but his counsel was unable to offer any evidence of Maldonado's present whereabouts. Neither the government nor Maldonado argues that the petition is moot.

## II. Standard of Review

The BIA agreed with the IJ's decision but did not adopt it. Where, as here, the BIA "conduct[ed] its own review of the evidence and law rather than adopting the IJ's decision, our review is limited to the BIA's decision." *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010) (quoting *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006)) (internal quotation marks omitted).

### III. Jurisdiction

We have jurisdiction to review petitions for relief under CAT. 8 U.S.C. § 1252(a)(4).[4] Our jurisdiction encompasses legal and constitutional issues arising from claims for deferral of removal under CAT. 8 U.S.C. § 1252(a)(2)(D).

When there are developments in a proceeding that suggest that it may be moot, we have an obligation to inquire whether a case or controversy under Article III of the Constitution continues to exist. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam). Of concern here is Maldonado's removal to Mexico after he filed his petition for review. After considering the government's response to our concern, we conclude that our review of Maldonado's petition has not been rendered moot by his removal.

"Mootness is a jurisdictional issue." *Blandino-Medina v. Holder*, 712 F.3d 1338, 1341 (9th Cir. 2013). It can be described as "the doctrine of standing set in a time frame." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). For a dispute to remain live without being dismissed as moot, "[t]he parties must continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990) (internal quotation marks omitted).

Maldonado's petition for review continues to present a case or controversy because there is solid evidence that he is

---

[4] In *Nuru*, we also explained that we have jurisdiction to review a claim for CAT relief under the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, Div. G, Title XXII, § 2242, 112 Stat. 2681-822 (codified at 8 U.S.C. § 1231). 404 F.3d at 1215.

currently present in the United States. According to the government's response, since Maldonado's removal in October 2009, he has updated his California driver's license. Obtaining deferral of removal under CAT would allow Maldonado to remain in the United States, giving him a clear "personal stake in the outcome of the lawsuit." *See Lewis*, 494 U.S. at 478 (internal quotation marks omitted).[5]

It is highly unlikely that Maldonado left the United States since he renewed his driver's license in 2010. *See* Gould dissent 21. Maldonado applied for CAT relief because he fears that, if he returns to Mexico, the enterprise will kill him. Indeed, every time he was removed to Mexico since 2000, the enterprise found and tortured him. Maldonado has little reason to return to Mexico.

We disagree with Judge Gould's dissent that we should invoke the fugitive disentitlement doctrine to dismiss Maldonado's petition. *See* Gould dissent 22–23. "The fugitive disentitlement doctrine allows us to dismiss a criminal defendant's appeal if he flees while the appeal is pending." *Antonio-Martinez v. INS*, 317 F.3d 1089, 1091 (9th Cir. 2003). We have exercised our discretion to apply this equitable doctrine to immigration petitioners, noting the

---

[5] We disagree with Judge Gould's dissent that this case warrants dismissal under the prudential mootness doctrine for several reasons. *See* Gould dissent 21–22. First, if Maldonado ultimately prevails before the agency, he will obtain meaningful relief—deferral of removal to Mexico. Second, we have not adopted prudential mootness *per se*. *Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (noting that some of our sister circuits have adopted the prudential mootness doctrine and, even assuming we could apply it, declining to do so). Third, we have applied prudential mootness only in the bankruptcy context, when there are no assets left to distribute. *See Deutsche Bank Nat'l Trust Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014).

similarity between "[a]n alien subject to a stayed deportation order" and "a criminal defendant on bail pending appeal." *Id.* at 1093. The alien, like the defendant, "remains subject to the court's authority and must surrender any time the court deems it appropriate." *Id.* Thus, in the immigration context, "we have dismissed petitions for review by aliens *who have fled custody* and cannot be located when their appeals come before this court." *Wenqin Sun v. Mukasey*, 555 F.3d 802, 804 (9th Cir. 2009) (emphasis added); *see also Zapon v. U.S. Dep't of Justice*, 53 F.3d 283, 285 (9th Cir. 1995) (discussing fugitive status where an alien "fail[ed] to surrender . . . despite a lawful order of deportation"). Here, Maldonado is not a fugitive because he did not flee. He complied with his deportation order and was removed to Mexico.

We are thus satisfied that this case is not moot[6] and that it does not otherwise warrant our discretionary dismissal. We proceed to the merits.

---

[6] Although we give great respect to dicta of the United States Supreme Court, *see United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc), we are not persuaded by Judge Gould's dissent that the Court's statement in *Ellis v. Dyson* warrants a determination of mootness here. 421 U.S. 426, 434 (1975); Gould Dissent 20–21. In the context of a civil rights case about the constitutionality of a local loitering statute, the Court "observe[d] in passing" that a case or controversy may not exist on remand for several reasons, including lack of knowledge of the petitioners' whereabouts. *Id.* The Court also noted that "if petitioners no longer frequent Dallas, it is most unlikely that a sufficiently genuine threat of prosecution for possible future violations of the Dallas ordinance could be established." *Id.* In other words, if the petitioners were no longer in Dallas, prevailing would in no way affect them. By contrast, what is at issue here is Maldonado's eligibility for deferral of removal under CAT, and that determination is not affected by his location within the United States.

## IV. CAT Claim

In 1988, the United States signed the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. 1465 U.N.T.S. 85 (1988). Article 3 of CAT states that a signatory nation must not "expel, return . . . or extradite" a person to a country "where there are substantial grounds for believing that he would be in danger of being subjected to torture." *Id.* at 114. In 1998, the United States passed the FARRA, which implemented Article 3 in the United States. *See Khourassany v. I.N.S.*, 208 F.3d 1096, 1099 (9th Cir. 2000). The FARRA and its implementing regulations allow for relief under CAT. The implementing regulations define torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

One of the available remedies under CAT is deferral of removal.[7] Under the applicable regulations:

> An alien who: has been ordered removed; has been found under § 1208.16(c)(3) to be entitled to protection under [CAT]; and is subject to the provisions for mandatory denial

---

[7] The other remedy is withholding of removal. Determining whether an alien is entitled to either form of protection under CAT requires the same analysis, so we discuss both types of cases as precedents. However, unlike deferral of removal, withholding of removal may not be granted if the alien has been convicted of a "particularly serious crime." 8 C.F.R. § 1208.16(d)(2). Both parties agree that Maldonado is only eligible for deferral of removal because his 1991 first degree burglary conviction qualifies as such a crime.

of withholding of removal . . . shall be granted deferral of removal to the country where he or she is more likely than not to be tortured.

*Id.* § 1208.17(a). Section 1208.16(c)(3) further explains:

In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to: (i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal.

*Id.* § 1208.16(c)(3). Section 1208.16(c)(2) further explains: "The burden of proof is on the applicant for withholding of removal . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* § 1208.16(c)(2).

Although the BIA has not interpreted the internal relocation provision of § 1208.16(c)(3), we have addressed it on several occasions. In *Hasan v. Ashcroft*, we explained that "in the CAT context, . . . the petitioners have the burden of presenting evidence to show that internal relocation is not a possibility." 380 F.3d 1114, 1123 (9th Cir. 2004). Citing this statement, we later denied a petition for review of an IJ

decision denying deferral of removal under CAT because the petitioner "failed to establish that internal relocation within Mexico was impossible." *Lemus-Galvan*, 518 F.3d at 1084. Similarly, in *Singh v. Gonzales*, we denied a petition for review of a BIA decision denying withholding of removal under CAT in part because the petitioner did not meet his "burden of proving he 'would be unable to live elsewhere in the country safely.'" 439 F.3d 1100, 1113 (9th Cir. 2006) (quoting *Hasan*, 380 F.3d at 1123).

Our interpretation of § 1208.16(c)(3) in *Hasan*,[8] *Lemus-Galvan*, and *Singh* departs from the plain text of the regulation. Although § 1208.16(c)(2) places the burden on the petitioner "to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal," *see also Kamalthas v. I.N.S.*, 251 F.3d 1279, 1282 (9th Cir. 2001), neither that provision nor § 1208.16(c)(3) requires the petitioner to prove anything as to internal relocation. Rather, § 1208.16(c)(3) provides that, if such evidence is relevant, it must be considered in assessing whether it is more likely than not that the petitioner would be tortured if removed. The text of § 1208.16(c)(3) differs from the standard set forth in *Hasan* and *Lemus-Galvan* because neither that section nor § 1208.16(c)(2) requires an applicant for deferral of removal to prove that internal relocation is "impossible." *See Lemus-Galvan*, 518 F.3d at 1084. Further, *Singh* departs from § 1208.16(c)(3) because the regulation does not specify that the inability to relocate safely is an element of a claim for deferral of removal for which a

---

[8] *Hasan* cites to the Department of Homeland Security regulations governing CAT claims. 8 C.F.R. § 208.16. These are the same as the Executive Office for Immigration Review regulations. 8 C.F.R. § 1208.16.

petitioner bears a "burden of pro[of]." *See Singh*, 439 F.3d at 1113.

We recently addressed internal relocation under CAT in *Perez-Ramirez v. Holder*, 648 F.3d 953 (9th Cir. 2011). In that case, we added a new gloss on the issue of internal relocation in § 1208.16(c)(3). Drawing from the asylum context, we held that "the BIA improperly placed the burden on petitioner to show that he could not relocate within Mexico and failed to apply the presumption of a nationwide threat." *Id.* at 958. In so holding, we relied on the burden-shifting scheme for internal relocation in the context of an asylum claim. *Id.* (citing *Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003)). The regulations governing asylum, however, differ markedly from those governing deferral of removal under CAT; they explicitly shift the burden to the government after the petitioner has established a well-founded fear of persecution:

> In cases in which the persecutor is a government or is government-sponsored, or the applicant has established persecution in the past, it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate.

8 C.F.R. § 1208.13(b)(3)(ii); *see Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1083 (9th Cir. 2013) (en banc). The regulations governing CAT deferral, unlike the asylum regulation, do not call for any burden shifting. As in *Hasan*, *Lemus-Galvan*, and *Singh*, our interpretation of

§ 1208.16(c)(3) in *Perez-Ramirez* departs substantially from the text of the regulation.

*Hasan*, *Lemus-Galvan*, *Singh*, and *Perez-Ramirez* run afoul of the regulations at issue here. Section 1208.16(c)(2) provides that an applicant for deferral of removal must demonstrate that it is more likely than not that he or she will be tortured if removed. In deciding whether the applicant has satisfied his or her burden, the IJ must consider all relevant evidence, including but not limited to the possibility of relocation within the country of removal. Section 1208.16(c)(2) does not place a burden on an applicant to demonstrate that relocation within the proposed country of removal is impossible because the IJ must consider all relevant evidence; no one factor is determinative. *See* § 1208.16(c)(3)(i)–(iv); *Kamalthas*, 251 F.3d at 1282. Nor do the regulations shift the burden to the government because they state that the applicant carries the overall burden of proof. To the extent that *Hasan*, *Lemus-Galvan*, *Singh*, and *Perez-Ramirez* conflict with the plain text of the regulations, they are hereby overruled.

In its supplemental briefs the government argues that there may be certain terms in the regulations that the BIA may ultimately need to clarify, but the government stresses that clarification should be the task of the BIA in the first instance. We do not quarrel with that principle. Indeed, we have said that "interpretation of BIA regulations is 'a matter that is placed primarily in agency hands.'" *Brezilien v. Holder*, 569 F.3d 403, 413 (9th Cir. 2009) (quoting *I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam)) (brackets omitted). If the BIA were to provide a new interpretation of the regulations, we would give that interpretation an appropriate level of deference. *See Auer v. Robbins*, 519 U.S.

452, 461 (1997). Indeed, the BIA is not precluded from reading § 1208.16(c)(3) as requiring a CAT petitioner to show that he is unable to safely relocate within the country of removal. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) ("an agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted") (internal quotation marks omitted).

Here, the BIA relied on *Lemus-Galvan* in affirming the denial of CAT relief, reasoning that Maldonado failed to show that internal relocation within Mexico was impossible. Although the BIA performed its own analysis, it ultimately affirmed the IJ's decision precisely because Maldonado failed to prove that relocation within Mexico was impossible. Indeed, according to the BIA, Maldonado's "fail[ure] to show that internal relocation within Mexico is impossible" constituted the very "circumstances" under which the IJ "properly found that the respondent failed to satisfy the requirements for eligibility for deferral of removal under [CAT]." The BIA's conclusion demonstrates that failure to meet the burden stated in *Lemus-Galvan* was the determinative blow to Maldonado's petition. Because *Lemus-Galvan*'s interpretation of the CAT regulations is no longer controlling, we grant the petition for review and remand to the BIA for reconsideration of Maldonado's claim for deferral of removal.

**PETITION GRANTED and REMANDED.**

GOULD, Circuit Judge, with whom CLIFTON, IKUTA, and N.R. SMITH, Circuit Judges, join, dissenting:

Maldonado for years has not been in touch with the lawyer who advocated before us. In such circumstances I believe that our proceeding to render a decision on the merits is essentially to give an advisory opinion. With the party not before us, we are engaging in what might be called "ghost ship" ruling, with the case careening along unmanned by the party seeking relief. We thus have the "ghost" of the prior controversy but not a real and actual controversy. The Supreme Court since the early days of our country has made clear that it is not the province of federal courts to give advisory opinions, even in matters of importance to society. *See Flast v. Cohen*, 392 U.S. 83, 96 n.14 (1968) ("The rule against advisory opinions was established as early as 1793."); *see generally* William R. Casto, *The Early Supreme Court Justices' Most Significant Opinion*, 29 Ohio N.U. L. Rev. 173 (2002) (detailing the history of the Jay Court's 1793 letter to George Washington declining a request for an advisory opinion).

As the majority correctly recites, mootness is a jurisdictional issue we must address. *See Blandino-Medina v. Holder*, 712 F.3d 1338, 1341 (9th Cir. 2013). But I regret that after this recognition, the balance of what the majority says on jurisdiction is not in my view correct. In *Ellis v. Dyson*, the Supreme Court confronted a case in which counsel for petitioners had not had contact with their clients for a year and the petitioners were not informed regarding the progress of the litigation. 421 U.S. 426, 434 (1975). The Court expressed "reservations . . . as to whether a case or controversy" existed. *Id.* The Court said that unless the petitioners were found by the time the matter was considered

on remand, "it [was] highly doubtful that a case or controversy could be held to exist; it is elemental that there must be parties before there is a case or controversy." *Id.* Although the statement in *Ellis v. Dyson* on which I rely might be argued to be a dictum, we have square precedent stating that we give great respect even to dicta of the United States Supreme Court. *See United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc). Further, what the Court said in *Ellis* is right on the money so far as I am concerned.

The majority argues that there is a clear indication that Maldonado is in the country because he renewed a driver's license after the date of his removal. But even if he was here in 2010, that does not necessarily mean that he remained here to the present day. Because I do not believe our court may properly rule on cases where a party is not present—either in person or through a lawyer who is in reasonable communication with the party—I would dismiss this case as moot for lack of a present justiciable controversy under Article III.

But even if the case is not moot in a constitutional sense, we should dismiss under the doctrine of prudential mootness, which allows a court to dismiss an appeal, even if not technically moot, "if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief." *Deutsche Bank Nat'l Trust Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014) (quoting *Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009)); *see also Ali v. Cangemi*, 419 F.3d 722, 723–24 (8th Cir. 2005) (dismissing an appeal as prudentially moot where an immigrant's whereabouts were unknown after he

failed to notify immigration authorities of his change of address).

We have applied similar prudential reasoning in immigration cases involving the fugitive disentitlement doctrine. For example, in *Antonio-Martinez v. INS* we said:

> Those who disregard their legal and common-sense obligation to stay in touch while their lawyers appeal an outstanding deportation order should be sanctioned. The prospect of disentitlement provides a strong incentive to maintain contact with the INS and counsel, rather than taking one's continued presence in the country for granted. . . . By failing to report his change of address to either his lawyer or the INS for an extended period of time, [petitioner] has effectively put himself beyond the jurisdiction of the court. Because no one has any clue where [petitioner] is, his petition has the same "heads I win, tails you'll never find me" quality that justifies disentitlement in other contexts.

317 F.3d 1089, 1093 (9th Cir. 2003). Although it might be argued that Maldonado's compliance with his removal order, even if he later returned to the United States, distinguishes his case from the petitioner's in *Antonio-Martinez*, I think the two cases are fundamentally similar in the most important respects. We cannot give Maldonado an effective remedy, just as none could be given to the petitioner in *Antonio-Martinez*. Had today's majority reached a conclusion that would deny him any relief, Maldonado would remain as

unaffected by it as he is by the majority's granting the petition as they do. I think that our prudential mootness doctrine can be adapted here to function like the fugitive disentitlement doctrine.

There are many actual or potential litigants in our system who have not yet been removed and who can petition for review on the merits issues presented in this case. Moreover, there will be others who will return after removal, and who can present the same issues while staying in contact with their counsel. We don't need to engage in "ghost ship" jurisprudence to give a ruling in a case where there is no one on board the ship of the dispute presented. Instead, we should limit invoking the awesome power of the federal courts to decide important immigration law matters to cases where parties also remain within the effective reach of our court's jurisdiction so that we can give meaningful relief. We should await such a case before deciding the issue that the majority does today. I respectfully dissent.

M. SMITH, Circuit Judge, with whom CLIFTON, Circuit Judge, joins, dissenting:

I agree with Judge Gould that we lack jurisdiction to review Maldonado's claim because his attorney is no longer in contact with him, and there is no evidence that Maldonado is presently in the United States. The only evidence in the record that Maldonado was in the United States subsequent to the date of his removal in 2009 is Maldonado's 2010 application for a driver's license in Palo Alto, California, and it was the government, not Maldonado's counsel, that supplied that evidence. Even if we assume that Maldonado

personally submitted such an application in 2010, that act tells us nothing definitive about whether Maldonado has remained in the United States since then. We do know for certain that petitioner's counsel has not heard from his client in some time, and that when petitioner's counsel recently contacted Maldonado's immediate family seeking sworn declarations from them concerning petitioner's location, the family refused to communicate further with him. Thus, there is simply no evidence in the record that Maldonado is currently in the United States, and counsel confirms that he has not been in contact with the petitioner. Under the circumstances, the case is moot.

I write separately from Judge Gould because even if I agreed with the majority that Maldonado's petition for review continues to present a justiciable controversy, which I do not, I would affirm the decision of the BIA denying Maldonado relief under the Convention Against Torture, 1465 U.N.T.S. 85 (1988) (CAT). Article 3 of CAT provides that no country shall "expel, return . . . or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." 1465 U.N.T.S. 85 (1988). The INS's regulations implementing CAT state that in determining "[e]ligibility for withholding of removal under the Convention Against Torture[,] . . . [t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). In making that determination, the immigration judge shall consider

> all evidence relevant to the possibility of
> future torture . . . including, but not limited to:
> (i) Evidence of past torture inflicted upon the

applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 1208.16(c)(3).

The petitioner is not required to prove that internal relocation is impossible; rather, that is just one factor the immigration judge must consider in assessing the likelihood of future torture. I agree with the majority that our decision in *Perez-Ramirez v. Holder*, 648 F.3d 953 (9th Cir. 2011), must be overruled because it improperly imported into the CAT context the burden-shifting scheme for asylum claims, which places the burden on the government to show that a previously tortured petitioner can safely relocate within the country of removal. *Id.* at 958. I also agree that the BIA may have interpreted language in our decision in *Lemus-Galvan v. Mukasey*, 518 F.3d 1081, 1084 (9th Cir. 2008), as setting a standard that a petitioner must "establish that internal relocation . . . [is] impossible," although that was not the intent of our opinion. However, I do not agree that our decisions in *Hasan v. Ashcroft*, 380 F.3d 1114 (9th Cir. 2004), *Singh v. Gonzales*, 439 F.3d 1100 (9th Cir. 2006), and the substance of our opinion in *Lemus-Galvan*, conflict with the governing regulations. In overruling these precedents, the majority throws the baby out with the bath water, and reaches a conclusion that distorts the BIA's carefully reasoned decision in Maldonado's case.

Our decisions in *Hasan*, *Singh*, and *Lemus-Galvan* did not alter the burden of proof set forth in 8 C.F.R. § 1208.16(c)(3). In *Hasan*, we noted that "the Hasans have not presented substantial grounds for believing that they would be unable to live elsewhere in the country safely," and placed equal emphasis on the fact that "there was no substantial evidence offered that the future persecution the Hasans would experience would rise to the level of torture." 380 F.3d at 1123. Similarly, in *Singh*, we concluded that "[t]he record evidence does not compel a finding that it is more likely than not that Mr. Singh will be tortured upon returning to India." 439 F.3d at 1113. Moreover, we noted that:

> If Mr. Singh's fear is based on the mistaken belief of police in a certain area, he would presumably be safe in another area of India where the police do not take him for a separatist. The record contains no evidence that simply being an apolitical Sikh would cause police to torture Mr. Singh if they do not believe he is a separatist.

*Id*. In *Lemus-Galvan*, the petitioner sought CAT relief, alleging that if he were returned to Mexico, he would be tortured by a drug cartel family because they "had been involved in a violent turf war with members of Lemus-Galvan's extended family in the northern border regions of Mexico." 518 F.3d at 1083. On appeal, we concluded:

> Lemus-Galvan failed to establish that internal relocation within Mexico was impossible. *See* 8 C.F.R. § 208.16(c)(3)(ii); *see also Hasan v. Ashcroft*, 380 F.3d 1114, 1123 (9th Cir. 2004). Substantial evidence therefore supports the

> IJ's decision to deny deferral of removal under the CAT. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir. 2003).

*Id*. at 1084. "Evidence that the applicant *could* relocate to a part of the country of removal where he or she is not likely to be tortured" is one of four non-exhaustive factors that the immigration judge shall consider in assessing "all evidence relevant to the possibility of future torture." 8 C.F.R. § 1208.16(c)(3) (emphasis added). *Lemus-Galvan* does not stand for the proposition that the ability to relocate is dispositive of a CAT petitioner's claim.

The BIA did not reject Maldonado's claim solely because he failed to prove that internal relocation within Mexico was impossible. The majority overstates the issue when it says that, "[A]ccording to the BIA, Maldonado's 'fail[ure] to show that internal relocation within Mexico is impossible' constituted the very 'circumstances' under which the IJ 'properly found that the respondent failed to satisfy the requirements for eligibility for deferral of removal under [CAT].'" Instead, the BIA cited Maldonado's failure to refute evidence that he could relocate to a different part of Mexico as just one factor supporting the denial of his CAT petition:

> In assessing whether it is more likely than not that the respondent would be tortured in Mexico, all evidence relevant to the possibility of future torture shall be considered, including evidence of past torture inflicted upon the respondent and evidence that the respondent could relocate where torture is unlikely. *See* 8 C.F.R. § 208.16(c)(3)(ii).

The BIA credited Maldonado's testimony that the police in Michoacán had previously tortured him, but concluded that Maldonado "did not show that the influence of the corrupt police officers located in Morelia extended country wide." The BIA went on to analyze the other factors, explaining that "the 2007 Country Report indicates that the Mexican government is aggressively prosecuting those who are involved in police corruption . . . . Therefore, the Mexican government will provide protection to the respondent from any corrupt police officers." The BIA determined that record evidence of other human rights violations in Mexico was not relevant to Maldonado's CAT claim because these violations were perpetrated against members of organized drug gangs, and Maldonado does not claim to be a member of such an organization. In denying Maldonado's petition, the BIA ultimately concluded: "Given that the respondent has not shown that the corrupt police officers could locate him anywhere in Mexico, and the Mexican government is aggressively prosecuting police corruption, the respondent has failed to show that internal relocation within Mexico is impossible."

A CAT petitioner is not required to conclusively prove that internal relocation is impossible—but the BIA did not hold Maldonado to such a standard here. I would dismiss this case as moot, but were I to reach the merits, I would affirm the decision of the BIA.

I respectfully dissent.