MEMORANDUM *
Misael Francisco Najarro-Portal appeals from the BIA and IJ’s decision denying his application for withholding of removal under the Immigration and Nationality Act and the Convention Against Torture (“CAT”), as well as deferral of removal under CAT.
1. Substantial evidence supports the BIA and IJ’s conclusions that there are serious reasons to believe Najarro-Portal committed serious non-political crimes in El Salvador. See Go v. Holder, 640 F.3d 1047, 1052 (9th Cir.2011). Najar-ro-Portal was convicted of committing several robberies in El Salvador in 1997. Although Najarro-Portal contends he was convicted of those crimes in absentia, and therefore that his conviction was invalid, the question is whether there are serious reasons to believe he committed a serious, non-political crime, not whether there are serious reasons to believe he was properly convicted. See id. (explaining that “serious reasons to believe” is equivalent to probable cause). Here, given the witness testimony cited as evidence of the crimes, substantial evidence supports the finding that there are serious reasons to believe Najarro-Portal committed the 1997 robberies. Accordingly, Najarro-Portal is not entitled to withholding of removal.
2. Substantial evidence also supports the IJ’s adverse credibility finding. See Shrestha v. Holder, 590 F.3d 1034, 1046-47 (9th Cir.2010). The IJ primarily based the adverse credibility finding on inconsistencies in record evidence regarding whether Najarro-Portal was a leader of the gang MS-13, rather than just a member. Najarro-Portal maintains that the evidence is not inconsistent because prison officials in El Salvador viewed him as a leader of the gang. Our review of the IJ’s credibility finding is “significantly restricted,” however. Shrestha, 590 F.3d at 1041 (quoting Kaur v. Gonzales, 418 F.3d 1061, 1064 n. 1 (9th Cir.2005)). Accordingly, because the IJ identified portions of the record that could reasonably be viewed as inconsistent with Najarro-Portal’s testimony on the gang leadership question, we uphold that determination as supported by substantial evidence. See id. at 1044.
3. Excluding all of Najarro-Por-tal’s testimony, however, as we must given the IJ’s adverse credibility finding, see Shrestha, 590 F.3d at 1048-49, we conclude that Najarro-Portal is entitled to deferral of removal under CAT. See Maldonado v. Lynch, 786 F.3d 1155, 1162 n. 7 (9th Cir.2015) (en banc).
Ample evidence supports Najarro-Por-tal’s claim that he will be tortured if returned to El Salvador, including: testimony by his attorney, Jaime Mira, who met with and relayed information from multiple concerned individuals in El Salvador not able to attend the proceedings in person; Mira’s declarations; translated records from Najarro-Portal’s prison file regarding his petitioning activities, prison transfers, and injuries while in prison; the declaration of Eliza Aracely Sarceño Monge, Najarro-Portal’s ex-girlfriend and the mother of his child; the declaration of Juan de Dios Masias, a friend who attends the same church in the United States as Najarro-Portal; Najarro-Portal’s mother’s testimony before the IJ; translated letters from Najarro-Portal to his mother; *722 and country reports. This evidence compels the view that Najarro-Portal will more likely than not be tortured if returned to El Salvador. Cf. Shrestha, 590 F.3d at 1048-49.
For instance, records from Najarro-Portal’s prison file demonstrate that he was actively engaged in petitioning activities while imprisoned in El Salvador.[1] The petitions show that he sought, on behalf of himself and others, such basic conditions as an adequate water supply, functioning electricity, and access to classes and workshops, and that although the petitions were filed in his name, he sought broad changes. In addition, as to himself only, he requested, among other things, transfers to other prison facilities, medical care, and a hearing to be released after serving two-thirds of his sentence. Najarro-Portal’s petitioning activity is closely linked to the reason he fears harm if returned to El Salvador.
Jeanne Rikkers, a U.S. citizen with whom Mira spoke in El Salvador, confirmed that Najarro-Portal was an original member of a group called OPERA, which advocated for prisoners’ rights. OPERA members, according to Rikkers, were mistreated and subject to frequent prison transfers. One member had been killed in' prison, and most feared for their lives and had fled the country, died, or were still in prison.
Judge Astrid de los Angeles Torres, who oversaw prison conditions in El Salvador, explained to Mira that prisoners like Na-jarro-Portal, who file complaints and are perceived as protest leaders, are mistreated, forcefully transferred to different prisons, put in solitary confinement, and accused of being gang leaders to justify their treatment. She was also certain that Na-jarro-Portal would be killed if returned to El Salvador — either directly at the hands of government officials, or by gang members, with the officials’ complicity. Monge agreed that if Najarro-Portal were returned to El Salvador, he would be killed, and explained that gang members told her it was in her best interest to inform them if Najarro-Portal returned to El Salvador “because they were not happy with him.”
The record contains evidence of the actual harm Najarro-Portal suffered at the hands of government authorities in El Salvador. Najarro-Portal’s prison file reveals that prison guards severely injured his jaw, probably breaking it, and then left him without treatment for some period of time, such that his jaw did not heal and he lost a “major” amount of weight due to not being able to eat. The jaw injury also made it difficult for him to speak. Along with prison records, Najarro-Portal’s letters to his mother, his mother’s testimony before the IJ, and Judge Torres’ statements confirm that prison guards beat Najarro-Portal, caused bruising on his face, and broke his jaw.
Also, Najarro-Portal was moved to the Zacatecoluca prison, reserved for “troublemakers,” with the intent that the harsh conditions and isolation there would stifle their activism. Country reports echo Zacatecoluca’s bad reputation.
Further, Monge told Mira that police officers visited the house she shared with Najarro-Portal multiple times, including waiting for him upon his release from prison and warning him “that it was best for him to leave town or they would harm him.” Consequently, Najarro-Portal went *723 into hiding. The visits continued after Na-jarro-Portal left for the United States. Monge also recounted an incident after Najarro-Portal was released from prison when police kidnapped him and drove him into rival gang territory, then stripped him and left him naked and at the mercy of the rival gang.
In light of this uncontradicted evidence, Najarro-Portal is entitled to deferral of removal under CAT.
PETITION GRANTED; REMANDED for further proceedings.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. Mira explained that documentation of much of Najarro-Portal’s petitioning directly on behalf of other inmates is unavailable because the prison records are not digitized, and because documents filed for other prisoners would be kept in those prisoners’ files, not Najarro-Portal’s. Monge did not keep the petitions, in part because keeping those types of documents, she said, could lead to problems with police.