Opinion by Judge PAEZ; Dissent by Judge GOULD; Dissent by Judge M. SMITH.
ORDER AND OPINION
ORDER
The Government’s Motion to Clarify Decision is granted as follows. On page 5 of the slip opinion, filed on March 27, 2015, the text of footnote 1 is amended as follows: “Because the IJ deemed Maldonado credible, we take his testimony as true for purposes of this opinion. See, e.g., Singh v. Holder, 764 F.3d 1153, 1159 (9th Cir.2014).”
PAEZ, Circuit Judge:
OPINION
Roberto Curinsita Maldonado (“Maldonado”) petitions for review of the Board of Immigration Appeals’ (“BIA”) decision dismissing his appeal of an immigration judge’s (“IJ”) denial of his application for deferral of removal under the Convention Against Torture (“CAT”). Although the IJ found that Maldonado testified credibly that he was tortured by corrupt Mexican police officers after he was deported in 2000, the BIA concluded that Maldonado was not “eligible for deferral o'f removal under [CAT] because he failed to establish that internal relocation within Mexico was impossible.”
In this proceeding, Maldonado argues that, although he bears the ultimate burden to prove he would be tortured if returned to Mexico, the BIA’s ruling on internal relocation is inconsistent with the plain text of the governing regulation, 8 C.F.R. § 1208.16(c)(3). He also challenges our framework in Lemus-Galvan v. Mukasey, 518 F.3d 1081, 1084 (9th Cir.2008), which the BIA cited in support of its ruling. We acknowledge that our case law on internal relocation under CAT departs from the text of § 1208.16(c)(3). We therefore take this opportunity sitting en banc to clarify our case law and to restore the integrity of § 1208.16(c)(3) in the analysis of a claim for deferral of removal under CAT. In light of the BIA’s reliance on our interpretation of § 1208.16(c)(3), we grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.
While this petition for review was pending, Maldonado was removed to Mexico. This development prompted us to question whether this petition is moot. After considering the government’s response to our post-argument inquiry, we conclude, as explained below, that this petition is not moot and proceed to the merits.
I. Background
Factual Basis for Torture Claim[1]
Maldonado entered the United States in 1966 as a young child. He obtained lawful *1158 permanent resident status through his father. As the result of a first degree burglary conviction in 1991, he was stripped of that status in 1997 and ordered deported to Mexico.[2]
After Maldonado returned to Mexico, he attempted to settle in his family’s hometown, Ciudad Hidalgo, in the state of Mi-choacan. As he passed through inspection at the airport in nearby Morelia, he was detained by what Maldonado described as “Mexican officers” or “Mexican judicial police” [3] who were inspecting individuals arriving after removal from the United States. The officers handcuffed him and took him to a police station. They questioned him about tattoos on his body, which they insisted were proof that he had been in a Mexican prison before relocating to Michoacan. As the police officers questioned Maldonado, they beat him, drove screwdrivers into his legs, and burned him with cigarettes, leaving multiple sears. At other points during his detention, the police officers administered shocks to his testicles and placed a bag filled with water over his head such that he believed he was choking. For approximately one month, the police.detained Maldonado in a cell at the station without access to a phone. While in custody, they continued to torture him. Eventually, Maldonado was able to contact his father, who paid $15,000 for his release. The police officers did not release Maldonado to his father. Instead, they moved Maldonado by helicopter to a prison and demanded more money for his release.
After three months of captivity and torture, the police informed Maldonado that they would release him only on the condition that he guide other recent deportees into their hands. When Maldonado refused, they stabbed him in the leg and beat him for two days. Fearing for his life, he agreed to participate. Maldonado’s role in the criminal enterprise was to approach recent deportees at the airport, promise to assist them, and guide them to hotels that had been chosen by the police. Maldonado would instruct the deportees to wait for him in the hotel. Instead of returning, Maldonado would notify the police, who would then go to the hotel and take the deportees into custody where, according to Maldonado, they likely suffered a fate similar to his own. Maldonado received modest payments for his assistance. After he had saved enough money, Maldonado fled the enterprise and re-entered the United States illegally.
Between 2000 and 2007, Maldonado returned to the United States and was deported three separate times. Each time he returned to Mexico, he was subjected to further torture and abuse in retaliation for leaving the criminal enterprise. When he returned to Ciudad Hidalgo after his removal in 2007, the enterprise had grown in sophistication and was apprehending deportees from airports across Mexico and taking them to prisons and other locations *1159 in Michoacan. The corrupt officers had also expanded the enterprise to include kidnapping elected officials’ children. Wanting nothing more to do with the criminal enterprise, Maldonado tried to sever his ties. When he attempted to leave the enterprise, however, he suffered further abuse. He suspected that he was being monitored and followed by the enterprise’s operatives.
Maldonado approached his only relative in the area, a cousin, for help. His cousin provided Maldonado with a small amount of money, which he used to travel by bus to Sonora, near the United States-Mexico border. In 2007, Maldonado attempted to enter the United States by foot through the Arizona desert, where he was apprehended.
Maldonado asserts that if he is returned to Mexico, the enterprise will kill him because he “know[s] too much of what they were doing.” In particular, Maldonado fears that he would be targeted because he overheard discussions of the enterprise’s plans to begin- pursuing government officials and their families. Maldonado suspects that photographs of him have been distributed to federal police “all over the place.”

Administrative Proceedings

On July 23, 2008, the Department of Homeland Security reinstated Maldonado’s June 17, 1997, removal order pursuant to 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8. Because Maldonado feared that he would be tortured if returned to Mexico, the matter was referred to an asylum officer for a reasonable fear determination. See 8 C.F.R. § 241.8(e). An asylum officer interviewed Maldonado, found him credible, and determined that he had a reasonable fear of being tortured by the corrupt “Mexican judicial police” if he were returned to Mexico. Maldonado’s matter was next referred to an immigration judge for a hearing on his claim of torture and request for relief under CAT. See 8 C.F.R. § 208.31(e). In pursuit of such relief, Maldonado filed a formal application with the IJ, which he supported with a declaration outlining the above facts and other documentary evidence regarding country conditions and official corruption in Mexico.
In considering Maldonado’s request for deferral of removal under CAT, the only relief he sought, the IJ credited Maldonado’s testimony. The IJ, however, denied his application because Maldonado “has available to him the opportunity to relocate in the country without fear of harm.” The IJ acknowledged Maldonado’s testimony that the enterprise had expanded its scope by entrapping deportees from across Mexico, but reasoned that, because the enterprise had to transport those deportees to its principal base in Michoacan, its authority did not extend nationwide. The IJ determined that relocation was possible because, although police corruption in Mexico was “rampant,” the government was “taking steps to investigate and prosecute those involved in corruption.” The IJ thus suggested that Maldonado could trade evidence of the corruption he witnessed for the Mexican government’s protection from the enterprise. Maldonado timely appealed to the BIA.
In affirming the IJ’s decision, the BIA “agree[d] with the ... finding that the respondent is not eligible for deferral of removal under [CAT] because he failed to establish that internal relocation within Mexico was impossible.” The BIA further explained that Maldonado “did not show that the influence of the corrupt police officers in Morelia extended country wide.” According to the BIA, Maldonado’s evidence that the enterprise was run by federal officers, and not city or state officers, was “speculative and unpersuasive.” It reasoned that “even if corrupt federal offi *1160 cers were involved, the respondent has not shown that they could locate him in every area of Mexico.” The BIA relied, in part, on documentary evidence that the Mexican government was prosecuting police corruption as further evidence that Maldonado could safely relocate. Thus, Maldonado “failed to satisfy the requirements for eligibility for deferral of removal under [CAT].”

Petition for Review and Removal

Maldonado filed a timely petition for review. He filed a motion for a stay of removal pending review, which a motions panel of this court denied. At oral argument, after confirming that Maldonado had been removed to Mexico, we raised the question of whether this petition was moot. We ordered the government to submit documentary proof that Maldonado was actually removed from the United States, and allowed the parties to present evidence of Maldonado’s current presence in the United States. The government’s response included documentation that on October 28, 2009, an immigration officer removed Maldonado to Mexico. The government’s response also included documentation from the California Department of Motor Vehicles that Maldonado updated his driver’s license in April 2010. Maldonado filed a response, but his counsel was unable to offer any evidence of Maldonado’s present whereabouts. Neither the government nor Maldonado argues that the petition is moot.
II. Standard of Review
The BIA agreed with the IJ’s decision but did not adopt it. Where, as here, the BIA “conducted] its own review of the evidence and law rather than adopting the IJ’s decision, our review is limited to the BIA’s decision.” Shrestha v. Holder, 590 F.3d 1034, 1039 (9th Cir.2010) (quoting Hosseini v. Gonzales, 471 F.3d 953, 957 (9th Cir.2006)) (internal quotation marks omitted).
III. Jurisdiction
We have jurisdiction to review petitions for relief under CAT. 8 U.S.C. § 1252(h)(4).[4] Our jurisdiction encompasses legal and constitutional issues arising from claims for deferral of removal under CAT. 8 U.S.C. § 1252(a)(2)(D).
When there are developments in a proceeding that suggest that it may be moot, we have an obligation to inquire whether a case or controversy under Article III of the Constitution continues to exist. North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (per curiam). Of concern here is Maldonado’s removal to Mexico after he filed his petition for review. After considering the government’s response to our concern, we conclude that our review of Maldonado’s petition has not been rendered moot by his removal.
“Mootness is a jurisdictional issue.” Blandino-Medina v. Holder, 712 F.3d 1338, 1341 (9th Cir.2013). It can be described as “the doctrine of standing set in a time frame.” Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)). For a dispute to remain live without being dismissed as moot, “[t]he parties must continue to have a personal stake in *1161 the outcome of the lawsuit.” Lewis v. Cont’l Bank Corp., 494 U.S. 472, 478, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (internal quotation marks omitted).
Maldonado’s petition for .review continues to present a case or controversy because there is solid evidence that he is currently present in the United States. According to the government’s response, since Maldonado’s removal in October 2009, he has updated his California driver’s license. Obtaining deferral of removal under CAT would allow Maldonado to remain in the United States, giving him a clear “personal stake in the outcome of the lawsuit.” See Lewis, 494 U.S. at 478, 110 S.Ct. 1249 (internal quotation marks omitted).[5]
It is highly unlikely that Maldonado left the United States since he renewed his driver’s license in 2010. See Gould dissent 1165. Maldonado applied for CAT relief because he fears that, if he returns to Mexico, the enterprise will kill him. Indeed, every time he was removed to Mexico since 2000, the enterprise found and tortured him. Maldonado has little reason to return to Mexico.
We disagree with Judge Gould’s dissent that we should invoke the fugitive disentitlement doctrine to dismiss Maldonado’s petition. See Gould dissent 1165— 66. “The fugitive disentitlement doctrine allows us to dismiss a criminal defendant’s appeal if he flees while the appeal is pending.” Antonio-Martinez v. INS, 317 F.3d 1089, 1091 (9th Cir.2003). We have exercised our discretion to apply this equitable doctrine to immigration petitioners, noting the similarity between “[a]n alien subject to a stayed deportation order” and “a criminal defendant on bail pending appeal.” Id. at 1093. The alien, like the defendant, “remains subject to the court’s authority and must surrender any timé the court deems it appropriate.” Id. Thus, in the immigration context, “we have dismissed petitions for review by aliens who have fled custody and cannbt be located when their appeals come before this court.” Wenqin Sun v. Mukasey, 555 F.3d 802, 804 (9th Cir.2009) (emphasis added); see also Zapon v. U.S. Dep’t of Justice, 53 F.3d 283, 285 (9th Cir.1995) (discussing fugitive status where an alien “fail[ed] to surrender ... despite a lawful order of deportation”). Here, Maldonado is not a fugitive because he did not flee. He complied. with his deportation order and was removed to Mexico.
We are thus satisfied that this case is not moot[6] and that it does not otherwise *1162 warrant onr discretionary dismissal. We proceed to the merits.
IV. CAT Claim
In 1988, the United States signed the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. 1465 U.N.T.S. 85 (1988). Article 3 of CAT states that a signatory nation must not “expel, return .». or extradite” a person to a country “where there are substantial grounds for believing that he would be in danger of being subjected to torture.” Id. at 114. In 1998, the United States passed the FARRA, which implemented Article 3 in the United States. See Khourassany v. I.N.S., 208 F.3d 1096, 1099 (9th Cir.2000). The FARRA and its implementing regulations allow for relief under CAT. The implementing regulations define torture as “any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted ... by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.” 8 C.F.R. § 1208.18(a)(1).
One of the available remedies under CAT is deferral of removal.[7] Under the applicable regulations:
An alien who: has been ordered removed; has been found under § 1208.16(c)(3) to be entitled to protection under [CAT]; and is subject to the provisions for mandatory denial of withholding of removal ... shall be granted deferral of removal to the country where he or she is more likely than not to be tortured.
Id. § 1208.17(a). Section 1208.16(c)(3) further explains:
In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to: (i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal.
Id. § 1208.16(c)(3). Section 1208.16(c)(2) further explains: “The burden of proof is on the applicant for withholding of removal ... to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.” Id. § 1208.16(c)(2).
Although the BIA has not interpreted the internal relocation provision of § 1208.16(c)(3), we have addressed it on several occasions. In Hasan v. Ashcroft, we explained that “in the CAT context, ... *1163 the petitioners have the burden of presenting evidence to show that internal relocation is not a possibility.” 380 F.3d 1114, 1123 (9th Cir.2004). Citing this statement, we later denied a petition for review of an IJ decision denying deferral of removal under CAT because the petitioner “failed to establish that internal relocation within Mexico was impossible.” Lemus-Galvan, 518 F.3d at 1084. Similarly, in Singh v. Gonzales, we denied a petition for review of a BIA decision denying withholding of removal under CAT in part because the petitioner did not meet his “burden of proving he “would be unable to live elsewhere in the country safely.’ ” 439 F.3d 1100, 1113 (9th Cir.2006) (quoting Hasan, 380 F.3d at 1123).
Our interpretation of § 1208.16(c)(3) in Hasan,[8] Lemus-Galvan, and Singh departs from the plain text of the regulation. Although § 1208.16(c)(2) places the burden on the petitioner “to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal,” see also Kamalthas v. I.N.S., 251 F.3d 1279, 1282 (9th Cir.2001), neither that provision nor § 1208.16(c)(3) requires the petitioner to prove anything as to internal relocation. Rather, § 1208.16(c)(3) provides that, if such evidence is relevant, it must be considered in assessing whether it is more likely than not that the petitioner would be tortured if removed. The text of § 1208.16(c)(3) differs from the standard set forth in Hasan and Lemus-Galvan because neither that section nor § 1208.16(c)(2) requires an applicant for deferral of removal to prove that internal relocation is “impossible.” See Lemus-Galvan, 518 F.3d at 1084. Further, Singh departs from § 1208.16(c)(3) because the regulation does not specify that the inability to relocate safely is an element of a claim for deferral of removal for which a petitioner bears a “burden of pro[of].” See Singh, 439 F.3d at 1113.
We recently addressed internal relocation under CAT in Perez-Ramirez v. Holder, 648 F.3d 953 (9th Cir.2011). In that case, we added a new gloss on the issue of internal relocation in § 1208.16(c)(3). Drawing from the asylum context, we held that “the BIA improperly placed the burden on petitioner to show that he could not relocate within Mexico and failed to apply the presumption of a nationwide threat.” Id. at 958. In so holding, we relied on the burden-shifting scheme for internal relocation in the context of an asylum claim. Id. (citing Melkonian v. Ashcroft, 320 F.3d 1061, 1070 (9th Cir.2003)). The regulations governing asylum, however, differ markedly from those governing deferral of removal under CAT; they explicitly shift the burden to the government after the petitioner has established a well-founded fear of persecution:
In cases in which the persecutor is a government or is government-sponsored, or the applicant has’established persecution in the past, it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate.
8 C.F.R. § 1208.13(b)(3)(ii); see Henriquez-Rivas v. Holder, 707 F.3d 1081, 1083 (9th Cir.2013) (en banc). The regulations governing CAT deferral, unlike the asylum regulation, do not call for any burden shift *1164 ing. As in Hasan, Lemus-Galvan, and Singh, our interpretation of § 1208.16(c)(3) in Perez-Ramirez departs substantially from the text of the regulation.
Hasan, Lemus-Galvan, Singh, and Perez-Ramirez run afoul of the regulations at issue here. Section 1208.16(c)(2) provides that an applicant for deferral of removal must demonstrate that it is more likely than not that he or she will be tortured if removed. In deciding whether the applicant has satisfied his or her burden, the IJ must consider all relevant evidence, including but not limited to the possibility of relocation within the country of removal. Section 1208.16(c)(2) does not place a burden on an applicant to demonstrate that relocation within the proposed country of removal is impossible because the IJ must consider all relevant evidence; no one factor is determinative. See § 1208.16(c)(3)(i)-(iv); Kamalthas, 251 F.3d at 1282. Nor do the regulations shift the burden to the government because they state that the applicant carries the overall burden of proof. To the extent that Hasan, Lemus-Galvan, Singh, and Perez-Ramirez conflict with the plain text of the regulations, they are hereby overruled.
In its supplemental briefs the government argues that there may be certain terms in the regulations that the BIA may ultimately need' to clarify, but the government stresses that clarification should be the task of the BIA in the first instance. We do not quarrel with that principle. Indeed, we have said that “interpretation of BIA- regulations is ‘a matter that is placed primarily in agency hands.’ ” Brezilien v. Holder, 569 F.3d 403, 413 (9th Cir.2009) (quoting I.N.S. v. Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam)) (brackets omitted). If the BIA were to provide a new interpretation of the regulations, we would give that interpretation an appropriate level of deference. See Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). Indeed, the BIA is not precluded from reading § 1208.16(e)(3) as requiring a CAT petitioner to show that he is unable to safely relocate within the country of removal. See Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 171, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007) (“an agency’s interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted”) (internal quotation marks omitted).
Here, the BIA relied on Lemus-Galvan in affirming the denial of CAT relief, reasoning that Maldonado failed to show that internal relocation within Mexico was impossible. Although the BIA performed its own analysis, it ultimately affirmed the IJ’s decision precisely because Maldonado failed to prove that relocation within Mexico was impossible. Indeed, according to the BIA, Maldonado’s “fail[ure] to show that internal relocation within Mexico is impossible” constituted the very “circumstances” under which the IJ “properly found that the respondent failed to satisfy the requirements for eligibility for deferral of removal under [CAT].” The BIA’s conclusion demonstrates that failure to meet the burden stated in Lemus-Galvan was the determinative blow to Maldonado’s petition. Because Lemus-Galvan’s interpretation of the CAT regulations is no longer controlling, we grant the petition for review and remand to the BIA for reconsideration of Maldonado’s claim for deferral of removal.
PETITION GRANTED and REMANDED.

. Because the IJ deemed Maldonado credible, we take his testimony as true for purposes of this opinion. See, e.g., Singh v. Holder, 764 F.3d 1153, 1159 (9th Cir.2014).

. Although Maldonado's declaration in support of his CAT claim states that he was ordered deported "[i]n or around 1998,” he testified that he did not leave the United States until 2000. The government, however, clarified that he was ordered removed on June 17, 1997, and was actually removed on November 7, 1998.

.Maldonado used these English-language terms along with two additional Spanish-language terms, "judiciales” and "policiales,” to describe the corrupt Mexican police officers who seized him.

. In Nuru v. Gonzales, we also explained that we have jurisdiction to review a claim for CAT relief under the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA”), Pub. L. No. 105-277, Div. G, Tide XXII, § 2242, 112 Stat. 2681-822 (codified at 8 U.S.C. § 1231). 404 F.3d 1207, 1215 (9th Cir.2005).

. We disagree with Judge Gould's dissent that this case warrants dismissal under the prudential mootness doctrine for several reasons. See Gould dissent 1165-66. First, if Maldonado ultimately prevails before the agency, he will obtain meaningful relief — deferral of removal to Mexico. Second, we have not adopted prudential mootness per se. Hunt v. Imperial Merchant Servs., Inc., 560 F.3d 1137, 1142 (9th Cir.2009) (noting that some of our sister circuits have adopted the prudential mootness doctrine and, even assuming we could apply it, declining to do so). Third, we have applied prudential mootness only in the bankruptcy context, when there are no assets left to distribute. See Deutsche Bank Nat’l Trust Co. v. F.D.I.C., 744 F.3d 1124, 1135 (9th Cir.2014).

. Although we give great respect to dicta of the United States Supreme Court, see United States v. Montero-Camargo, 208 F.3d 1122, 1132 n. 17 (9th Cir.2000) (en banc), we are not persuaded by Judge Gould’s dissent that the Court’s statement in Ellis v. Dyson warrants a determination of mootness here. 421 U.S. 426, 434, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975); Gould Dissent 1165. In the context of a civil rights case about the constitutionality of a local loitering statute, the Court "observe[d] in passing” that a case or ' controversy may not exist on remand for several reasons, including lack of knowledge of the petitioners’ whereabouts. Id. The Court also noted that "if petitioners no longer frequent Dallas, it is most unlikely that a *1162 sufficiently genuine threat of prosecution for possible future violations of the Dallas ordinance could be established.” Id. In other words, if the petitioners were no longer in Dallas, prevailing would in no way affect them. By contrast, what is at issue here is Maldonado’s eligibility for deferral of removal under CAT, and that determination is not affected by his location within the United States.

. The other remedy is withholding of removal. Determining whether an alien is entitled to either form of protection under CAT requires the same analysis, so we discuss both types of cases as precedents. However, unlike deferral of removal, withholding of removal may not be granted if the alien has been convicted of a "particularly serious crime.” 8 C.F.R. § 1208.16(d)(2). Both parties agree that Maldonado is only eligible for deferral of removal because his 1991 first degree burglary conviction qualifies as such a crime.

. Hasan cites to the Department of Homeland Security regulations governing CAT claims. 8 C.F.R. § 208.16. These are the same as the Executive Office for Immigration Review regulations. 8 C.F.R. § 1208.16.