**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

REYNA ISABEL ALVARADO-
GARCIA,

          Petitioner,

v.

LORETTA E. LYNCH, Attorney General,

          Respondent.

No.   15-71138

Agency No. A205-757-355

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 16, 2016
San Francisco, California

Before: SCHROEDER, WARDLAW, and OWENS, Circuit Judges.

    Reyna Isabel Alvarado-Garcia ("Alvarado"), a native and citizen of

Honduras, petitions for review of the Board of Immigration Appeals's ("BIA")

decision affirming the Immigration Judge's ("IJ") denial of Alvarado's petition for

withholding of removal and protection under the Convention Against Torture

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

("CAT").  Where the BIA does not conduct de novo review of the IJ's decision but instead reviews for "clear error," we evaluate "the reasons explicitly identified by the BIA, and then examine the reasoning articulated in the IJ's oral decision in support of those reasons." *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008). We have jurisdiction pursuant to 8 U.S.C. § 1252.  We grant the petition in part and remand to the BIA for further proceedings consistent with this disposition.

1.      Because the BIA did not determine whether Honduran women unable to leave abusive relationships comprise a "particular social group," *see* 8 U.S.C. § 1231(b)(3)(A), we remand to the BIA to address that question in the first instance.  "[U]nder the ordinary remand rule, the agency should be given an opportunity in the first instance to make legal determinations entrusted to it by Congress." *Perdomo v. Holder*, 611 F.3d 662, 669 (9th Cir. 2010) (noting that the rule is "particularly applicable" to the question of the existence of a "particular social group").  Here, the BIA concluded only that the IJ's finding that Alvarado "had managed to leave the relationship" was not "clearly erroneous."  The IJ, in turn, determined that Alvarado had not "established that she is a member of any particular social group as a result of her prior relationship" without first assessing whether Alvarado's proposed social group was legally cognizable.  Both the IJ and the BIA thus assumed without deciding that Alvarado's proposed group of

2

Honduran women unable to leave abusive relationships was legally cognizable. We therefore remand to the agency, on an open record limited to this question, for it to make that determination expressly.

Remand is necessary because, if Honduran women unable to leave abusive relationships constitute a particular social group, the record compels the conclusion that Alvarado was persecuted by Jiminson Torres on account of her membership in that group and the Honduran government was unable or unwilling to protect Alvarado from persecution. *See Doe v. Holder*, 736 F.3d 871, 877–78 (9th Cir. 2013). Although the IJ found that Alvarado was able to "leave" her relationship because, *inter alia*, she left Torres's home and resisted his initial attempts to reconcile, substantial record evidence compels the conclusion that Torres continued to abuse and control Alvarado: He beat her violently when he discovered that she had reported his abuse to the police; he followed her "every time [she] came back from work" trying to convince her to reconcile; and, when persuasion failed, he and his gang threatened Alvarado that if she would not follow their "laws" by returning to the relationship, they would force her to leave town. The record thus compels the conclusion that Alvarado is just as bound by Torres as she was when they lived in the same home and has been unable to "leave" her relationship, and the IJ clearly erred by finding to the contrary.

3

In addition, substantial evidence does not support the agency's conclusion that the Honduran "authorities appear to have taken some actions to protect the applicant" and that the government was therefore willing and able to protect Alvarado. *See id.* The only evidence purportedly suggesting the government's willingness and ability to assist Alvarado was that when Alvarado reported Torres's abuse, the local police gave her a summons to deliver to Torres. Yet the record overwhelmingly shows that the government was not responsive to Alvarado's requests for protection: The local police required Alvarado to hand the summons to her abuser, notifying him of her police report and subjecting her to further abuse; there were no apparent repercussions for Torres's failure to appear in response to the summons; the police later told Alvarado that she would be required to file a second and a third report before they would investigate because "women usually withdrew the request and would go back together with their husbands"; and there is nothing in the record to suggest that the police did anything to investigate Alvarado's report. *See Afriyie v. Holder*, 613 F.3d 924, 931–32 (9th Cir. 2010). Thus substantial evidence compels the conclusion that the police were aware of Torres's abuse of Alvarado and were either unwilling or unable to intervene to protect her.

2.     Substantial evidence supports the BIA's conclusion that Alvarado is ineligible for CAT relief because it is not more likely than not that she would be tortured upon removal to Honduras. *See Maldonado v. Lynch*, 786 F.3d 1155, 1162 (9th Cir. 2015). The record does not compel the conclusion that the past abuse Alvarado suffered rises to the level of torture or that Alvarado would more likely than not suffer torture at the hands of Torres's gang or another gang if she returned to Honduras.

**GRANTED in part, DENIED in part, and REMANDED.**