**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CARLOS E. LOCKWOOD ALVAREZ,

　　　Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

　　　Respondent.

No. 20-9502
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HOLMES**, **BACHARACH**, and **EID**, Circuit Judges.

_____

In 2018, Carlos E. Lockwood Alvarez, a citizen of Mexico, attempted U.S.

entry without possessing a valid entry document.  The Department of Homeland

Security charged Lockwood Alvarez with inadmissibility under 8 U.S.C.

§ 1182(a)(7)(A)(i)(I) and the Immigration Judge (IJ) found clear and convincing

evidence supporting the charge.  Lockwood Alvarez then applied for deferral of

removal under the Convention Against Torture (CAT).  The IJ denied the application

and Lockwood Alvarez appealed the decision to the Board of Immigration Appeals

(BIA).  The BIA found no clear error in the IJ's denial, concluding that "it is not

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

more likely than not that [Lockwood Alvarez] will experience torture at the hands of public officials in Mexico," and it dismissed the appeal. R. Vol. I at 3.

Lockwood Alvarez now seeks review of the BIA's decision. He argues, in part, that the BIA erred by applying the clear error standard to the IJ's factual finding for the relocation factor under 8 C.F.R. § 1208.16(c)(3)(ii). However, looking exclusively to the BIA's decision, the BIA rested its relocation conclusion on a purely factual finding supported by substantial evidence under the proper legal standards. Thus, we deny Lockwood Alvarez's petition for judicial review. We also grant Lockwood Alvarez's motion for leave to proceed *in forma pauperis*.

## I.

In 2011, Lockwood Alvarez, a citizen of Mexico, was removed from the United States to Mexico. According to Lockwood Alvarez's testimony, after his removal he was kidnapped and tortured for multiple days in Tijuana, Mexico by police officers but escaped. He then relocated to Puerta Vallarta, Mexico where he was kidnapped and tortured a second time by police officers but again escaped.

Lockwood Alvarez relocated back to Tijuana where he lived for two years without experiencing kidnapping or torture. Working as an electrician, he later received a shooting threat from his employer. Following the threat, in 2018, Lockwood Alvarez sought U.S. admission at the border in San Ysidro, California, without a valid entry document. The Department of Homeland Security charged him with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I).

2

The IJ found clear and convincing evidence supporting the charge. Lockwood Alvarez then applied for deferral of removal under CAT and the IJ denied his application. The IJ found that, under 8 C.F.R. § 208.16(c), he had "not demonstrated that it is more likely than not that he will be tortured upon return to Mexico." *Id.* at 130. Regarding relocation, the IJ determined:

> [Lockwood Alvarez] has not established that relocation is foreclosed. 8 C.F.R. § 208.16(c)(3). . . . After the second kidnapping, [Lockwood Alvarez] was able to move, work, and live without being detained or harmed again for at least two years. And . . . [Lockwood Alvarez] testified that he encountered authorities after being kidnapped but was never asked for money or harmed in any way during these numerous contacts, suggesting that he was able to safely relocate. Furthermore, [Lockwood Alvarez] left Mexico and traveled to the United States because of a dispute with a former employer, wholly unrelated to the incidents of past harm.

*Id.* Ultimately, after weighing the "totality of the independent evidence," the judge found that Lockwood Alvarez had "not demonstrated that it is more likely than not that he will be tortured upon return to Mexico." *Id.* at 131.

Lockwood Alvarez appealed the IJ's decision to the BIA. The decision was issued by a single BIA member, "review[ing] the findings of fact . . . under the 'clearly erroneous' standard," and "review[ing] all other issues, including issues of law, discretion, or judgment, under the de novo standard." *Id.* at 3. Ultimately, the BIA found "no clear error in the Immigration Judge's findings that it is not more likely than not that [Lockwood Alvarez] will experience torture at the hands of public officials in Mexico." *Id.* (citing *Matter of Z-Z-0-*, 26 I. & N. Dec. 586, 590 (BIA 2015) (stating "an Immigration Judge's predictive findings of what may or may not

3

occur in the future are findings of fact, which are subject to a clearly erroneous standard of review")).  In arriving at this conclusion, the BIA weighed several factors, including the two asserted instances of past torture, the possibility of relocation in the past and future, and all country conditions evidence.

Regarding relocation, the BIA "agreed with the Immigration Judge that [Lockwood Alvarez] could avoid future harm by relocating within Mexico" because he "was able to move to a different area of Mexico without experiencing physical harm for at least two years after the final kidnapping incident." *Id.* at 4.  The BIA did not specifically address whether the IJ's particular phrasing of its conclusion on relocation ("[Lockwood Alvarez] has not established that relocation is foreclosed") changed the analysis.  *Id.* at 130.  The BIA subsequently dismissed the appeal. Lockwood Alvarez now petitions this court for review of the BIA decision.

## II.

We review "the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard." *Xue v. Lynch*, 846 F.3d 1099, 1104 (10th Cir. 2017) (quoting *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005)).  When a single BIA member issues a decision, "we review the [BIA] order as the final agency determination and limit our review to the grounds relied upon by the BIA." *Htun v. Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016).  Of course, "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).  However, "[a]s long as the BIA decision

4

contains a discernable substantive discussion, . . . our review extends no further, unless it explicitly incorporates or references an expanded version of the same reasoning below." *Id.*

The BIA reviews the IJ's findings of fact under the clearly erroneous standard, and it reviews all other issues, including those of law, discretion, or judgment, under the de novo standard. 8 C.F.R. § 1003.1(d)(3)(i)–(ii). To succeed on a CAT claim, an applicant must show "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* § 1208.16(c)(2). In assessing that showing, an IJ must consider the totality of circumstances, that is, all evidence relevant to the possibility of future torture, including: (1) evidence of past torture; (2) evidence that applicant could relocate to a part of the country where he or she will not likely be tortured; (3) evidence of gross, flagrant, or mass violations of human rights within the proposed country of removal; and (4) other relevant information regarding country conditions. *Id.* § 1208.16(c)(3).

Lockwood Alvarez asks this court to overturn the BIA's decision because it "affirmed the Immigration Judge's conclusion, without addressing the Immigration Judge's misapplication of the legal standard" under the relocation factor. Aplt. Br. at 40. To be clear, we agree that the IJ applied the wrong test when it stated that the possibility of relocation must be foreclosed or impossible. *See Manning v. Barr*, 954 F.3d 477, 488 (2d Cir. 2020) (finding that there is "not . . . a burden on the applicant to establish relocation is not possible"); *Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) (en banc) ("Section 1208.16(c)(2) does not place a burden on an

5

applicant to demonstrate that relocation within the proposed country of removal is impossible."); *see also Patel v. Att'y Gen.*, 259 F. App'x 511, 513 (3d Cir. 2007) (unpublished) ("There is . . . no need to establish that internal relocation is impossible or unreasonable in order to make out a prima facie case for relief under the [Convention Against Torture].").  But our review does not extend into the IJ's decision because "the BIA decision contain[ed] a discernable substantive discussion" and gave no reason to look beyond that discussion.  *Uanreroro*, 443 F.3d at 1204. Further, and regardless of the IJ's framing of the relocation standard, the BIA's decision on the relocation factor was based on a purely factual finding supported by substantial evidence.

In its decision, the single-member BIA analyzed several factors, including the asserted instances of past torture, the possibility of relocation in the past and future, and all country conditions evidence.  While Lockwood Alvarez claims that unequal, even "determinative" weight was placed on the relocation factor, there is no evidence of this claim.  Aplt. Br. at 39–40.  Rather, the BIA properly weighed each factor in its analysis of the totality of the circumstances.  No factor was considered dispositive.

The BIA found the relocation factor weighed against Lockwood Alvarez, specifically stating that he "could avoid future harm by relocating within Mexico." R. Vol. I at 3.  Contrary to Lockwood Alvarez's contention, the BIA did not require proof that relocation would be impossible and it did not state that he failed to show relocation was foreclosed; the BIA simply concluded that Lockwood Alvarez "could avoid future harm."  Aplt. Br. at 40.  Notably, the basis of this conclusion was a

6

purely factual finding—that Lockwood Alvarez "was able to move to a different area of Mexico without experiencing physical harm for at least two years after the final kidnapping incident"—which was supported by substantial evidence. R. Vol. I at 4; *see Uanreroro*, 443 F.3d at 1205 (stating that a factual finding meets the substantial evidence standard where it is supported by "reasonable, substantial, and probative evidence"). Therefore, because the BIA's conclusion relied on a purely factual finding unaffected by any legal standard, we find no error in the BIA's analysis under the relocation factor.

The fact that the IJ inaccurately applied the factor to require that relocation was impossible does not change our view on whether the BIA erred in its legal determination or failed to support its conclusion with substantial evidence. When a single BIA member issues a decision, "we review the [BIA] order as the final agency determination and limit our review to the grounds relied upon by the BIA." *Htun*, 818 F.3d at 1118. In this case, we would only look to an IJ's decision "when seeking to understand the grounds provided by the BIA." *Uanreroro*, 443 F.3d at 1204. But here, the terms of the BIA decision provide no reason for us to "consult" the IJ's decision for a "more complete explanation." *Id.* The BIA applied the plain language of the federal regulations to properly treat the possibility of relocation as one factor bearing on the likelihood of torture. *See* 8 C.F.R. § 1208.16(c)(3). Accordingly, considering the BIA's discernable substantive discussion—applying factual findings supported by substantial evidence under the proper legal standards—we do not

7

extend our review beyond this final agency determination. *See Htun*, 818 F.3d at 1118; *Uanreroro*, 443 F.3d at 1204.[1]

In addition to challenging the BIA's treatment of the relocation factor, Lockwood Alvarez makes three other arguments for reversal. First, he objects to the BIA applying the clear error standard for predictive findings on the likelihood of torture. He argues that *Matter of R-A-F-*, 27 I. & N. Dec. 778, 779 (A.G. 2020), signals a shift to de novo review of an IJ's predictions as to future events. But in that case, the U.S. Attorney General only confirmed the distinction between predictions of future events and characterization of future events as torture: "the immigration judge's prediction as to what would likely happen to the [applicant] if removed may have been a factual determination that the [BIA] reviews only for clear error, but whether that predicted outcome satisfies the regulatory definition of torture . . . constitutes a legal judgment subject to de novo review, as it necessarily involves applying the law to decided facts." *Id.* (citations and internal quotations marks omitted). Here, the BIA correctly applied this approach as it reviewed the IJ's predictions, such as whether Lockwood Alvarez could relocate, under the clear error standard, and nothing in the decision shows that the BIA applied any characterizations of these predictions outside a de novo standard of review.

Second, Lockwood Alvarez maintains that the BIA erred by applying a burden of proof above substantial grounds for evaluating the risk of torture. However, to "be

---

[1] The dissent does not grapple with the unique standard of review in immigration cases. *See Uanreroro*, 443 F.3d at 1203.

entitled to any type of CAT relief, an applicant must 'establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Igiebor v. Barr*, 981 F.3d 1123, 1128 (10th Cir. 2020) (quoting 8 C.F.R. § 1208.16(c)(2)). Following the proper circuit authority and the federal regulations, the BIA applied the correct standard; it did not apply a stricter, mathematical one as Lockwood Alvarez submits.

Third, Lockwood Alvarez declares that the BIA erred by requiring proof of a particularized risk of torture. Under governing authority, "pervasive violence in an applicant's country generally is insufficient to demonstrate [that] the applicant is more likely than not to be tortured upon returning there." *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1362 (10th Cir. 2019); 8 C.F.R. § 1208.17(a) (requiring a deferral-of-removal applicant to show that he or she will likely be tortured after removal). The BIA here appropriately required Lockwood Alvarez to show that he would be tortured. As he presented only generalized country conditions, the BIA did not err in affirming that Lockwood Alvarez failed to meet his burden to show a particularized risk of torture. *Matter of W-G-R-*, 26 I. & N. Dec. 208, 225–26 (BIA 2014) (rejecting claim based on chain of assumptions in fear of what might happen, rather than evidence that meets the burden of demonstrating it is more likely than not that the applicant will be subject to torture).

## III.

Lockwood Alvarez also filed a motion for leave to proceed *in forma pauperis*. To proceed *in forma pauperis*, litigants must show a "reasoned, nonfrivolous

argument on the law and facts in support of the issues raised in the action." *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005). As he presented law and facts to challenge the BIA's decision, Lockwood Alvarez's petition for review is nonfrivolous. We therefore grant his motion for leave to proceed *in forma pauperis*.

## IV.

In conclusion, the BIA reviewed this case under the proper legal standards, applied factual findings supported by substantial evidence, and did not err in finding Lockwood Alvarez failed to establish a reasonable probability of future persecution. Because the BIA's relocation conclusion rested on a purely factual finding supported by substantial evidence, it was unaffected by the legal standard used by the IJ. Thus, we deny Lockwood Alvarez's petition. We also grant Lockwood Alvarez's motion for leave to proceed *in forma pauperis*.

Entered for the Court

Allison H. Eid
Circuit Judge

*Lockwood Alvarez v. Garland*, No. 20-9502
**BACHARACH**, J., dissenting

I respectfully dissent. Mr. Carlos Lockwood Alvarez is a noncitizen subject to removal. But he allegedly fears that removal would subject him to torture in Mexico. Given this alleged fear, he invokes a federal regulation authorizing deferral of removal for noncitizens who show a likelihood of torture. 8 C.F.R. §§ 1208.16(c), 1208.17(a).

In considering whether to defer removal, the immigration judge needed to consider multiple factors, including the possibility that Mr. Lockwood Alvarez could avoid torture by relocating within the country of removal. 8 C.F.R. § 1208.16(c)(3). The immigration judge considered these factors and found that Mr. Lockwood Alvarez had not shown a likelihood of torture upon removal to Mexico.

Mr. Lockwood Alvarez challenges this conclusion, arguing in part that

- the immigration judge legally erred by requiring proof that relocation would be foreclosed and

- this error should have prevented the Board of Immigration Appeals from applying the deferential clear-error standard to the immigration judge's finding on relocation.

I agree with Mr. Lockwood Alvarez.

**1.    Mr. Lockwood Alvarez allegedly suffers torture in Mexico.**

Mr. Lockwood Alvarez is a Mexican citizen who testified that he had twice been kidnapped and tortured by Mexican police: the first time in Tijuana, the second time in Puerto Vallarta. After these kidnappings, he briefly lived without incident in a gated community. After leaving that community, however, he allegedly faced more threats and harassment. Fearing a third kidnapping, Mr. Lockwood Alvarez fled to the United States and sought deferral of removal under the Convention Against Torture.[1]

**2.    The Board orders removal.**

An immigration judge rejected the claim, concluding that Mr. Lockwood Alvarez had not shown a likelihood of torture in Mexico. In reaching this conclusion, the immigration judge reasoned in part that Mr. Lockwood Alvarez had not proven that relocation within Mexico would be foreclosed.

He appealed to the Board of Immigration Appeals. In that appeal, the Board considered relocation as a factual issue bearing on the likelihood of torture. Treating the possibility of relocation as a factual issue, the Board concluded that the immigration judge had not clearly erred and adopted her

---

[1]    He also requested asylum and withholding of removal, but these requests aren't involved here.

factual finding. Given the possibility of relocation, the Board also concluded that Mr. Lockwood Alvarez had not proven a likelihood of torture. So the Board ordered removal.

3.    **The Board legally erred by applying the clear-error standard of review, rather than de novo review, because the immigration judge had based her factual finding on the wrong legal test.**

Because the Board issued its own opinion, we review its opinion rather than the immigration judge's. *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011). Mr. Lockwood Alvarez argues that the Board shouldn't have applied the clear-error standard to the factual findings on relocation because the immigration judge had applied the wrong legal test.[2] I agree with Mr. Lockwood Alverez.

As the majority acknowledges, the immigration judge based her factual finding on the wrong legal test. Given the immigration judge's use of the wrong legal test, the Board should have conducted de novo review rather than use the deferential clear-error standard of review.

---

[2]    For example, Mr. Lockwood Alvarez argues in his opening brief:

> The Immigration Judge determined that Lockwood "has not established that relocation is foreclosed." On clear error review, the [Board of Immigration Appeals] affirmed the Immigration Judge's conclusion, without addressing the Immigration Judge's misapplication of the legal standard.

Appellant's Opening Br. at 40 (footnotes omitted).

3

**A.    The immigration judge used the wrong legal test to find that relocation wasn't foreclosed, so the Board should not have applied the deferential clear-error standard.**

The immigration judge concluded that Mr. Lockwood Alvarez hadn't shown a likelihood of torture upon returning to Mexico. In reaching this conclusion, the judge relied mainly on three findings:

1.    Mr. Lockwood Alvarez hadn't established that relocation within Mexico would be foreclosed.

2.    The evidence of dangerous conditions in Mexico was not enough to support Mr. Lockwood Alvarez's claim that torture was more likely than not.

3.    He hadn't shown that he would be personally targeted for torture.

In my view, the immigration judge applied the wrong legal test when considering the first factor (the possibility of relocation).

Though noncitizens bear the burden of proving a likelihood of torture, the immigration judge can assess the proof based on various forms of evidence, including the ability to avoid torture by relocating within the country of removal. 8 C.F.R. § 1208.16(c)(3)(i)–(iv). But noncitizens may satisfy their burden even if it'd be possible to relocate within the country of removal. *Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) (en banc).

In the appeal from the immigration judge's ruling, the Board properly described the noncitizen's burden, treating the possibility of relocation as

4

simply one factor bearing on the likelihood of torture. But the immigration judge had gone further, requiring Mr. Lockwood Alvarez to establish that relocation would be foreclosed. Indeed, the majority acknowledges that the immigration judge used the wrong legal test by forcing Mr. Lockwood Alvarez to address relocation and prove that it would be foreclosed. Maj. Op. at 5–6; *see Manning v. Barr*, 954 F.3d 477, 488 (2d Cir. 2020) (stating that 8 C.F.R. § 1208.16(c)(3)(ii) "does not mean there is a burden on the applicant to establish relocation is not possible"); *Maldonado*, 786 F.3d at 1164 ("Section 1208.16(c)(2) [the provision placing the overall burden of proof on the petitioner] does not place a burden on an applicant to demonstrate that relocation within the proposed country of removal is impossible . . . ."); *see also Patel v. Att'y Gen. of U.S.*, 259 F. App'x 511, 513 (3d Cir. 2007) (unpublished) ("There is . . . no need to establish that internal relocation is impossible or unreasonable in order to make out a prima facie case for relief under the [Convention Against Torture].").

Despite the immigration judge's error, the Board deferred to her factual finding on relocation by using the deferential clear-error test. In my view, the Board erred in deferring to the immigration judge's factual finding despite her use of the wrong legal test.

The Supreme Court has explained that the clear-error test is based on deference to the original fact-finders because of their superior vantage point and the inefficiency of relitigating factual issues on appeal. *Anderson*

5

*v. City of Bessemer City*, 470 U.S. 564, 574–75 (1985). The Department of Justice adopted this rationale in the immigration context, enacting regulations requiring the Board of Immigration Appeals to use the clear-error standard when reviewing an immigration judge's factual findings. Board of Immigration Appeals: Procedural Reforms to Improve Case Management 67 Fed. Reg. 54,878, 54,889–90 (Aug. 26, 2002) (codified at 8 C.F.R. § 1003.1(d)(3)).

Deference to the original fact-finders makes no sense, however, when they base their factual findings on the wrong legal test. *See Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 855 n.15 (1982) ("Of course, if the trial court bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard."); *see also Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1254 (11th Cir. 2005) (stating that application of the clear-error standard to a district court's factual findings is "premised on the understanding that '[a]pplication of an improper legal standard . . . is never within the district court's discretion'" (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002))). So we've held that "when a lower court's factual findings are premised on improper legal standards . . . , they are not entitled to the protection of the clearly erroneous standard, but are subject to *de novo* review." *In re Kretzinger*, 103 F.3d 943, 946 (10th Cir. 1996) (quoting *In*

6

*re Osborn*, 24 F.3d 1199, 1203 (10th Cir. 1994), *abrogated in part on other grounds by Eastman v. Union Pac. R.R.*, 493 F.3d 1151 (10th Cir. 2007)); *see also Kabba v. Mukasey*, 530 F.3d 1239, 1245 (10th Cir. 2008) (calling *Kretizinger*'s holding "uncontroversial"). Other circuits routinely take the same approach, replacing the clear-error standard with de novo review when the original fact-finder has premised a factual finding on an incorrect application of legal principles. *Harrison v. United States*, 284 F.3d 293, 297–98 (1st Cir. 2002); *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 382 (2d Cir. 2005); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 460 (4th Cir. 1996); *Aransas Project v. Shaw*, 775 F.3d 641, 658 (5th Cir. 2014); *Lincoln v. Board of Regents*, 697 F.2d 928, 942 n.13 (11th Cir. 1983).

The Board not only deferred to the immigration judge's factual finding under the clear-error standard but also adopted her factual finding on the ability to relocate:

> Further, we agree with the Immigration Judge that the respondent could avoid future harm by relocating within Mexico. "Evidence that the applicant could relocate to a part of the country of removal where he . . . is not likely to be tortured" is relevant to determining that clear probability of future torture. 8 C.F.R. § 1208.16(c)(3)(ii). As the Immigration Judge found, the respondent was able to move to a different area of Mexico without experiencing physical harm for at least two years after the final kidnapping incident (IJ at 9). Therefore, we find no clear error in the Immigration Judge's factual findings with regard to internal relocation.

R. vol. I, at 4.

7

The Board erred by applying the clear-error standard and adopting the immigration judge's factual finding despite her use of the wrong legal test. Given the immigration judge's error, our precedent required the Board to conduct de novo review. The majority compounds the Board's mistake by disregarding its deference to a factual finding that had been based on the wrong legal test.

### B.    The Board's use of the wrong standard of review tainted its decision.

The Board's application of the wrong standard of review requires us to remand because we don't know what the Board would have decided if it hadn't relied on the immigration judge's factual finding as to relocation. *See, e.g.*, *United States v. Cordery*, 656 F.3d 1103, 1108 (10th Cir. 2011) ("There is no way for us to know exactly what . . . the court would have chosen in the absence of the . . . impermissible factor."); *accord Rafiq v. Gonzales*, 468 F.3d 165, 167 (2d Cir. 2006) (granting the petition for judicial review because the Board of Immigration Appeals didn't apply the correct standard).

To predict the outcome without the Board's mistaken use of the clear-error standard, we'd consider the account of Mr. Lockwood Alvarez, who the immigration judge regarded as generally credible. R. vol. I, at 124–27. Mr. Lockwood Alvarez testified that after the second kidnapping, he had safely moved to a gated community in Tijuana. But he later left the

8

gated community, explaining that he couldn't afford to stay there. After leaving, Mr. Lockwood Alvarez allegedly encountered threats and harassment.

From this evidence, the Board could reasonably infer that Mr. Lockwood Alvarez might have difficulty relocating even if relocation were not foreclosed. This inference could support Mr. Lockwood Alvarez's claim even if he hadn't shown that relocation would be foreclosed. *See Manning v. Barr*, 954 F.3d 477, 488 (2d Cir. 2020) (rejecting the immigration judge's conclusion that the ability to relocate weighed against the petitioner when relocation would have required avoidance of any familial contact).

Had the Board considered this difficulty in relocating (rather than consider only whether relocation had been foreclosed), the Board might have come to a different decision when weighing the other evidence presented by Mr. Lockwood Alvarez. For example, the Board might have put greater weight on the two earlier kidnappings. Or the Board might have responded differently to Mr. Lockwood Alvarez's arguments that he'd be targeted again—no matter where he relocated—because of his characteristics, including self-identification as an American, lack of Spanish fluency, and foreign mannerisms. *See Wanjinru v. Holder*, 705 F.3d 258, 266 (7th Cir. 2013) (remanding in part because the noncitizen

9

"would stick out" if he relocated because he couldn't speak "the local language (at least without an accent)").

* * *

Because the immigration judge based her factual finding on the wrong legal test, the Board should have conducted de novo review on relocation rather than use the deferential clear-error standard. Because the Board used the wrong standard of review, we have no way of knowing what it would have decided under de novo review. So I would vacate the decision and remand for the Board to conduct de novo review of the factual finding on relocation.